548 So.2d 1169 (1989)
MERIDIAN, Inc., Meridian Nursing Centers, Inc., and Pinellas Meridian Limited Partnership, Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, Appellant
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 88-419, 88-421.
District Court of Appeal of Florida, First District.
September 12, 1989.
Thomas W. Stahl of Newell & Stahl, P.A., Tallahassee, for appellants Meridian, Inc., Meridian Nursing Centers, Inc., and Pinellas Meridian Ltd. Partnership.
Alfred W. Clark, Tallahassee, for appellant Health Care and Retirement Corp. of America.
Richard A. Patterson, Asst. General Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
ZEHMER, Judge.
By consolidated appeals, we review a final order of the Department of Health and Rehabilitative Services (HRS) denying the *1170 several applicants' applications for certificates of need to construct additional nursing home beds. We find no error in HRS's decision that, for purposes of determining the number of beds in the planning horizon fixed pool, rule 10-5.011(1)(k)2.h, Florida Administrative Code (1986),[1] is properly construed to mean that the population estimates adopted by the Governor's office at the time the initial applications were filed and reviewed must be used, rather than the most recent estimates adopted by that office at the time of the hearing, and affirm.
Appellants submitted applications for certificates of need to construct 120-bed nursing homes in Pinellas County during the July 1985 nursing home batching cycle. HRS preliminarily denied the applications and appellants requested a section 120.57(1) formal hearing. The parties stipulated that the sole issue for determination was the proper computation of the number of nursing home beds needed in Pinellas County in the July 1985 batching cycle, and further, that if sufficient numeric need was found to exist under the nursing home bed formula, applicant's applications satisfied all other applicable statutory and rule criteria for the issuance of a certificate of need (CON). Appellants contended that the most recent population data from the office of the Governor should be used in calculating the bed need. HRS contended that the population data available at the time the CON applications were required to be filed should be used to determine the numerical bed need in the fixed pool for that batching cycle. Using the July 1985 population figures in the formula set forth in rule 10-5.011(1)(k), the formula projected a surplus of 90 beds in Pinellas County for that planning horizon. Using the most recent population release (January 1987), the formula projected a need in July 1988 for 278 additional nursing home beds. The hearing officer accepted appellants' arguments, ruling that the most recent population data should be used, and recommended granting the applications.
In the final order under appeal, HRS rejected the hearing officer's recommendation to use the most recently released data as an incorrect application of the law. HRS stated that its interpretation of rule 10-5.011(1)(k)2 is set forth in Manor Care of Hillsborough County v. HRS, 9 F.A.L.R. 1102 (Feb. 5, 1987), Florida Health Facilities Corporation v. HRS, 9 F.A.L.R. 2093 (Apr. 17, 1987), and Broward Health Care v. HRS, 9 F.A.L.R. 1973 (Mar. 31, 1987), wherein this rule was interpreted to require the use of population estimates available at the time of initial application review. HRS cited Gulf Court Nursing Center v. HRS, 483 So.2d 700 (Fla. 1st DCA 1985), and Boca Raton AKC v. HRS, 493 So.2d 1055 (Fla. 1st DCA 1986), as supporting its interpretation of the rule. In the order, HRS stated that if the rule were interpreted as appellants suggest, population projections would vary based on the date of an applicant's final administrative hearing and this would encourage needless applications and delay in the hope that eventually new projections would justify approval of the application. HRS further stated that its position is an interpretation of an existing rule, and not a statement of incipient policy that must be fully explicated and supported in each case. HRS struck the hearing officer's finding of fact that HRS failed to explicate its policy at the hearing and denied appellants' applications on the ground that there was no numeric need for the nursing homes proposed by appellants.
The standard of appellate review applicable to this appeal requires us to affirm the final order unless that decision is demonstrated to be arbitrary, capricious, or not in compliance with the Health Facility and Services Development Act. Section 381.709(6)(b), Fla. Stat. (1987). We conclude that the construction given rule 10-5.011(1)(k)2.h by HRS is neither arbitrary nor capricious, but is completely in accord with the purposes of the act and the principles of comparative review espoused in Gulf Court. The logic of HRS's position is unassailable. It gives effect to the notion that, pursuant to applicable principles of *1171 comparative review, the number of beds in the fixed pool in the July 1985 planning cycle (July 1988) to which the applicants' applications were addressed (as shown by the formula) would become set at July 1985 for purposes of comparative review, even though new data coming to light in later months or years might reflect a different bed need when factored into the formula. If the number of beds in the fixed pool could be altered by new information developed after the initial applications were filed, there would be no basis for ever fixing the number in the pool, and the evils in the system addressed in Gulf Court would be perpetuated. Indeed, this court has already approved, without opinion, this construction of the rules by HRS. See Florida Health Facilities Corp. v. HRS, 9 F.A.L.R. 2708, aff'd without opinion, 520 So.2d 588 (Fla. 1st DCA 1988).
Appellants argue that this result is contrary to the principle explicated in McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), that a hearing officer conducting a section 120.57 proceeding should freely consider relevant evidence of changing economic conditions and other current circumstances external to the application in passing upon the propriety of an application for a banking license. We have no quarrel with the application of this principle in appropriate cases where the underlying organic legislation contemplates that the agency will consider changing conditions right up to the date of the final order. Here, however, the underlying organic statutory authority contemplates comparative review based upon a fixed pool of bed need set at the time of the initial applications. This factor necessarily distinguishes McDonald from the case under review, and precludes the application of the principle cited from McDonald.
AFFIRMED.
SMITH and WENTWORTH, JJ., concur.
NOTES
[1] That rule provides in pertinent part:

For the purposes of this rule, the three year projections of population shall be based upon the official estimates and projections adopted by the Office of the Governor.