553 So.2d 1351 (1989)
ST. FRANCIS HOSPITAL, INC., Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 89-572.
District Court of Appeal of Florida, First District.
December 20, 1989.
Robert A. Weiss of Parker, Hudson, Rainer & Dobbs, Tallahassee, Thomas D. Watry, Atlanta, for appellant.
Richard A. Patterson, Asst. General Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
SMITH, Judge.
St. Francis Hospital appeals a final order of the Department of Health and *1352 Rehabilitative Services (HRS) rejecting its application for a certificate of need (CON) to convert medical surgical beds to neonatal intensive care beds. The sole issue on appeal focuses on HRS's non-rule policy that a CON application will be rejected without consideration when the project costs contained in the application exceeds the estimated project costs set forth in the letter of intent (LOI). We reverse.
St. Francis's LOI proposed a total project cost of $463,132.00, but later, in its CON application, after making a more detailed analysis of the project's costs, St. Francis stated $569,625.00 as the actual cost of the project. Although St. Francis received notice of HRS's policy before the CON application deadline, this occurred after the LOI was filed, and it was too late to change the LOI to conform with the more accurate project cost. When HRS rejected its application, St. Francis requested a formal administrative hearing pursuant to section 120.57, Florida Statutes (1987).
HRS's position in this case stems from changes to sections 381.707 and 381.709, effective October 1, 1987. Section 381.709(2)(c) provides in pertinent part:
381.709 Review Process.  The review process for certificates of need shall be as follows:
* * * * * *
(2) Letters of Intent. 
* * * * * *
(c) Letters of Intent shall describe the proposal with specificity, including proposed expenditures. .. . The letter of intent shall contain a certified copy of a resolution by the board of directors of the applicant ... authorizing the filing of the application described in the letter of intent; authorizing the applicant to incur the expenditures necessary to accomplish the proposed project; certifying that if issued a certificate, the applicant shall accomplish the proposed project ... at or below the costs contained in the application. .. .
Section 381.709(2)(d) required for the first time that an applicant publish a legal advertisement concerning the proposed project within fourteen (14) days after filing a letter of intent. HRS requires this advertisement to reflect the amount of the proposed capital expenditure. Section 381.707 provides, in pertinent part:
381.707 Application Content.  An application for a certificate of need shall contain:
* * * * * *
(2) A statement of the financial resources needed by and available to the applicant to accomplish the proposed project. This statement shall include:
* * * * * *
(b) A detailed listing of the needed capital expenditures, including sources of funds.
* * * * * *
(4) A certified copy of a resolution by the board of directors of the applicant ... authorizing the filing of the application; authorizing the applicant to incur the expenditures necessary to accomplish the proposed project; certifying that if issued a certificate, the applicant shall accomplish the proposed project ... at or below the costs contained in the application... .
HRS requires the same resolution that accompanied the letter of intent to be filed with the application.
Also pertinent to this appeal is section 381.709(3)(a), which provides in part:
Within fifteen (15) days after the applicable application filing deadline established by department rule, the staff of the department shall determine if the application is complete. If the application is incomplete, the staff shall request specific information from the applicant necessary for the application to be complete... . If the requested information is not filed with the department within (21) days of the receipt of the staff's request, the application shall be deemed incomplete and deemed withdrawn from consideration.
*1353 With respect to HRS's non-rule policy, the hearing officer found:
9. HRS's policy is to treat the letter of intent as "locking in" an applicant to the type of service, number of beds and proposed capital expenditure proposed in the letter. Therefore, no changes in these items are permitted after the letter of intent is filed. The prohibition against these changes is premised on HRS's interpretation of sections 381.707 and 381.709. The agency construes these provisions to require consistency between the letter of intent and application as to type of service, unit size and costs. As to the prohibition against increasing project costs, HRS cites to the fact that the board resolution must be prepared before the filing of the letter of intent. To accomplish this, an applicant could not increase the costs after the letter of intent had been filed. From this interpretation flows HRS's policy of consistently rejecting all applications that have a project cost larger than that reflected in the letter of intent. There are, however, two exceptions to the "no-change" policy  those being to allow an applicant to "downsize" the project in terms of number of beds and to reduce the originally projected costs. These changes are permitted on the theory that HRS has authority to grant a "partial" award and to encourage cost savings.
10. HRS concedes that no statute or rule specifically authorizes it to reject an application, as it did that of SFH [St. Francis Hospital], but that the policy is nonetheless justified because the legal advertisement, which is published after the letter of intent is filed but before the application is submitted, "puts potential competitors on notice," "provides notice to the (general) public," and "provides an opportunity for business." Further, once publication is effected, there is no opportunity for an applicant to publish a second advertisement to conform with any revisions. However, the record is silent as to what extent the general public, competitors and businesses rely upon the advertisement, how they might be misled by relying upon the same or the effects, if any, of such "misunderstanding."
* * * * * *
12. Since the 1987 amendments became effective, HRS has consistently followed a policy of returning all applications that contain a project cost greater than that identified in the letter of intent... .
* * * * * *
14. At hearing, HRS acknowledged that it does not always reject an application that fails to include certain information. In the case of omissions or ambiguities, HRS permits an applicant to supply additional information within a specified time period. However, changes in the number of beds, type of service or project cost are not considered to be an omission or ambiguity and cannot be corrected or revised through the omission process.
The hearing officer concluded that HRS's policy is authorized by, and is a permissible interpretation of the controlling statutes. The hearing officer found no impediment to HRS utilizing this non-rule policy on a case-by-case basis so long as its policy is explicated by an adequate record foundation in the proceeding. Relying on his finding of fact that there is no evidence to show to what extent the public relies on the advertisement of the project costs in the letter of intent, or how these persons would be adversely affected if the projected costs were increased after the advertisement, the hearing officer concluded that a rational basis for HRS's policy had not been shown in this proceeding. Thus, the hearing officer recommended that HRS accept St. Francis's CON application for review in the applicable batching cycle.
With respect to St. Francis's contention that it had not been given meaningful notice of this non-rule policy, the hearing officer concluded, and we agree, that there *1354 is no requirement that an agency give notice of its decision to use incipient policy at some future date. An agency may apply its non-rule policy so long as affected persons have a clear point of entry to challenge the use of the policy.
In its final order, HRS accepted the hearing officer's findings of fact, but disagreed, in part, with the conclusions reached by the hearing officer. HRS opined that when the hearing officer determined that HRS's incipient policy was within the permissible range of statutory interpretation, there was no further need to show a rational basis for its policy. HRS accordingly rejected St. Francis's submission of a CON application for neonatal intensive care beds.
In a separate, unrelated proceeding, a final order has been entered determining that HRS's policy  of rejecting CON applications without further review where the project costs set out in the CON application exceeds the proposed capital expenditures in the LOI  is an invalid unpromulgated rule. National Health Corp., L.P. v. HRS, 11 FALR 359 (Fla. 1st DCA 1989) (HRS 1989). In National Health Corp., L.P. v. HRS, the hearing officer found that this policy is a "rule", section 120.52(16), Florida Statutes, but that HRS's failure to promulgate this policy as a rule was not fatal to its application in an adjudicatory 120.57 proceeding on a case-by-case basis so long as HRS provided record support for application of the policy in each case. HRS did not appeal this final order.
When an agency seeks to validate agency action based upon a policy that is not recorded in rules or discoverable precedents, that policy must be established by expert testimony, documentary opinions, or other evidence appropriate to the nature of the issues involved and the agency must expose and elucidate its reasons for its discretionary action. E.M. Watkins & Co. v. Board of Regents, 414 So.2d 583, 588 (Fla. 1st DCA 1982) citing Florida Cities Water Co. v. Public Service Company, 384 So.2d 1280 (Fla. 1980), Anheuser-Busch, Inc. v. Department of Business Regulations, 393 So.2d 1177 (Fla. 1st DCA 1981), and McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977). Compare Meridian, Inc. v. Department of Health and Rehabilitative Services, 548 So.2d 1169 (Fla. 1st DCA 1989) (policy recorded in discoverable precedents). The agency may apply incipient or developing policy in a section 120.57 administrative hearing, provided the agency explicates, supports and defends such policy with competent, substantial evidence on the record in such proceedings. Gulf Coast Home Health Services v. Department of Health and Rehabilitative Services, 513 So.2d 704 (Fla. 1st DCA 1987).
In this case, the hearing officer determined that the evidence did not support HRS's policy of automatic rejection when the CON application contains a higher project cost than the LOI. HRS does not challenge this portion of the recommended order, but instead makes a novel and unsupported argument that it doesn't have to explain its non-rule policy because the policy is a permissible construction of the controlling statute.
We recognize that an agency interpretation of a statute which simply reiterates the legislature's statutory mandate and does not place upon the statute an interpretation that is not readily apparent from its literal reading, nor in and of itself purport to create rights, or require compliance, or to otherwise have the direct and consistent effect of the law, is not an unpromulgated rule, and actions based upon such an interpretation are permissible without requiring an agency to go through rulemaking. However, in this case, HRS's policy does not simply reiterate a legislative mandate and is not readily apparent from a literal reading of the statutes involved and thus, HRS was required to show the reasonableness and factual accuracy of its policy. Having failed to support its policy in the proceedings below, HRS is required to accept for review St. Francis's CON application in the applicable batching cycle.
*1355 REVERSED and REMANDED for proceedings consistent with this opinion.
THOMPSON and MINER, JJ., concur.