573 So.2d 19 (1990)
BEVERLY ENTERPRISES-FLORIDA, INC., D/B/a Beverly-Gulf Coast Florida, Inc., Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 89-1569.
District Court of Appeal of Florida, First District.
December 14, 1990.
*20 Stephen K. Boone of Boone, Boone, Klingbeil, Boone & Roberts, P.A., Venice, for appellant.
Lesley Mendelson, Sr. Atty. for Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
SMITH, Judge.
Beverly Enterprises-Florida, Inc. (Beverly) was awarded Certificate of Need (CON) number 3746 to construct a 60-bed addition to its existing facility, Suwannee Health Care Center, in Live Oak, Florida. Thereafter, Beverly filed an application for expedited review of its proposal to transfer the 60 beds authorized by CON 3746 to Florida Land Trust Number Seven, to be constructed as a 60-bed addition to the Land Trust's nursing home, Surrey Place Nursing Center of Live Oak, also located in Live Oak. The Department of Health and Rehabilitative Services (HRS) determined that this proposal was not merely a transfer of a CON which could be accomplished by expedited review, but was instead an addition of beds to an existing facility, which requires a full batched comparative review. We reverse.
Section 381.706(1), Florida Statutes (Supp. 1988), lists all the health-care-related projects which are subject to review and includes among them in paragraphs (a) and (e), those projects that add beds by new construction or alteration, or make any change in licensed bed capacity. Section 381.706(2) provides for expedited review of those projects involving, among other things, a transfer of a CON or a combination within one nursing home facility of the beds or services authorized by two or more CONs issued in the same planning subdistrict. § 381.706(2)(g) and (j), Fla. Stat. (Supp. 1988). Section 381.705(3) provides that for any application authorized by section 381.706(2)(j) or (k) involving an approved facility based upon a CON application filed prior to December 31, 1984, HRS shall approve such application unless (1) the proposed consolidation or division would result in a facility or facilities not meeting the criterion of financial feasibility or (2) unless the consolidation or division would result in beds or services being moved more than 15 miles from their original certificated location.[1] The review criteria of section 381.705(3) is very abbreviated *21 compared to the review criteria set forth in section 381.705(1) applying to other CON projects. Surrey Place's application for a CON was filed on July 16, 1984.
According to findings made by the hearing officer, which are not challenged on appeal, sections 381.705(3) and 381.706(2)(j) and (k) were added to the statutes by the 1988 Legislature in response to lobbying efforts by Health Quest Corporation. See Ch. 88-294, §§ 20 and 21, Laws of Fla. According to the findings, Health Quest sought the amendment because it had a CON for a 180-bed nursing home to be built in Sarasota County, and it desired expedited review of its application to divide the 180 bed CON into a 120-bed freestanding facility and a 60-bed addition to an existing facility in Sarasota County. Ultimately, HRS agreed that under these amendments, Health Quest would be entitled to expedited review of applications, not only to divide or combine CONs, but to do both at the same time; thus, Health Quest could divide its 120-bed CON and take 60 beds and add them to an existing facility operated by Health Quest.
Similarly, it was Beverly's contention that its proposal was subject to expedited review because its project was a "transfer" and/or "combination" as those terms are used in section 381.706(2)(g) and (j). When HRS disagreed, Beverly requested a formal administrative hearing, arguing that its application meets the applicable criteria and should be granted. Beverly further contended that HRS arbitrarily and capriciously denied its application while granting others which are substantially similar to Beverly's proposal.
In response, HRS argued that it had a policy that a "transfer" occurs only when a new owner agrees to take over the project and build the facility as intended by the original CON applicant. HRS interpreted section 381.706 to mean that if a project is listed in subsection (1) of that section, the project is subject to full batched review and cannot be given expedited review as provided for in section 381.706(2). Since additions of beds and changes in licensed bed capacity are projects listed in subsection (1) then HRS interpreted a "transfer" or "combination" to be projects other than those which add beds to an existing facility. Also, HRS interpreted the provisions of section 381.706(2)(j), as allowing only for the combination of CONs whose validity *22 period has not expired. It was HRS's policy that a CON ceased to exist when a facility is built and licensed. Thus, reasoned HRS, Beverly's proposal was not a "combination" because since Surrey Place's CON ceased to exist when Surrey Place was opened in 1988 only CON 3746 was valid.
The hearing officer rejected HRS's interpretation of the applicable statutes, commenting that there is no support for HRS's contention that subsections (1), (2) and (3) of section 381.706 are mutually exclusive, and that inclusion in one subsection means automatic exclusion from the other subsections. Instead, concluded the hearing officer, subsection (1) lists all the projects which are subject to review, and subsections (2) and (3) list which of the projects set forth in subsection (1) are subject to expedited review or are exempt from review. This conclusion is supported by the fact that although section 381.706(1) specifically includes a transfer of a CON in paragraph (n), this paragraph clearly provides that expedited review  as opposed to full batched comparative review  shall be conducted of a transfer of a certificate of need. Moreover, the hearing officer concluded that HRS's two announced policies  that a "transfer" is a mere change of ownership, and that a CON ceases to exist when a facility is built and licensed  had no record support. Finally, the hearing officer noted that HRS's position in this case is contrary to the position taken by HRS in previous cases, most notably, the Health Quest application already discussed, and that HRS had offered no competent evidence to show why Beverly should be treated differently than Health Quest. Finding that Beverly's application sought a "transfer" and/or a "combination" subject to expedited review, and that Beverly's proposal met the review criteria, the hearing officer recommended that HRS issue a final order approving the application.
Nevertheless, contrary to the hearing officer's recommended order, HRS entered a final order concluding that Beverly's proposal to transfer its 60-bed CON to Surrey Place, was subject to batched comparative review rather than expedited review. We find this was error.
As this court recently stated in St. Francis Hospital, Inc. v. Department of Health and Rehabilitative Services, 553 So.2d 1351, 1354 (Fla. 1st DCA 1989):
When an agency seeks to validate agency action based upon a policy that is not recorded in rules or discoverable precedents, that policy must be established by expert testimony, documentary opinions, or other evidence appropriate to the nature of the issues involved and the agency must expose and elucidate its reasons for its discretionary action. E.M. Watkins & Co. v. Board of Regents, 414 So.2d 583, 588 (Fla. 1st DCA 1982), citing Florida Cities Water Co. v. Public Service Company, 384 So.2d 1280 (Fla. 1980), Anheuser-Busch, Inc. v. Department of Business Regulations, 393 So.2d 1177 (Fla. 1st DCA 1981), and McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977). Compare Meridian, Inc. v. Department of Health and Rehabilitative Services, 548 So.2d 1169 (Fla. 1st DCA 1989) (policy recorded in discoverable precedents). The agency may apply incipient or developing policy in a section 120.57 administrative hearing, provided the agency explicates, supports and defends such policy with competent, substantial evidence on the record in such proceedings. Gulf Coast Home Health Services v. Department of Health and Rehabilitative Services, 513 So.2d 704 (Fla. 1st DCA 1987).
... .
We recognize that an agency interpretation of a statute which simply reiterates the legislature's statutory mandate and does not place upon the statute an interpretation that is not readily apparent from its literal reading, nor in and of itself purport to create rights, or require compliance, or to otherwise have the direct and consistent effect of the law, is not an unpromulgated rule, and actions based upon such an interpretation are permissible without requiring an agency to go through rulemaking. However, in this case, HRS's policy does not *23 simply reiterate a legislative mandate and is not readily apparent from a literal reading of the statutes involved and thus, HRS was required to show the reasonableness and factual accuracy of its policy... .
In this case, HRS changed its interpretation of the controlling statutes without offering a sufficient record predicate or otherwise offering a reasonable explanation for its abandonment of its announced interpretation of sections 381.706(2)(j) and (k) and section 381.705(3). See St. Francis Hospital, 553 So.2d at 1354; see also, Health Care and Retirement Corporation of America, Inc. v. Department of Health and Rehabilitative Services, 559 So.2d 665 (Fla. 1st DCA 1990); and HCA Gulf Coast Hospital v. Department of Health and Rehabilitative Services, 10 F.A.L.R. 2807, 2809 (Fla.Dept. of Health and Rehabilitative Services 1988).
Beverly's CON was approved based on the need in the district, not on a facility-specific need; and as argued by Beverly, this need will be equally satisfied by the addition of 60 beds to Surrey Place. HRS offers no valid reason why this is not true, but simply urges that batched comparative review is preferable to permitting expedited review in this instance.
Finally, HRS urges that if this court determines that Beverly is entitled to expedited review, the proper remedy in this case is to remand to HRS for review of the application on an expedited basis. Resolution of this issue requires a brief recitation of the procedural steps taken in this case.
Immediately after Beverly requested a formal administrative hearing on HRS's decision to deny expedited review, a question arose as to the scope of the administrative hearing. HRS sought to confine the issue to be determined to whether Beverly's application for transfer was subject to expedited review. If it was determined that expedited review applies, HRS argued that it would then evaluate the merits of the application. On the other hand, Beverly argued that the issue should be whether the transfer should be approved, and that all the issues which needed to be considered for approval should be considered at the hearing. The hearing officer agreed that HRS's refusal to consider the application was tantamount to a denial of the transfer. Thus, this being a de novo proceeding intended to formulate agency action, the hearing officer reasoned it would be more appropriate and economical to deal with all the issues considering Beverly's application at one time rather than having the possibility of two hearings being held on this one application. We agree.
A request for a formal administrative hearing commences a de novo proceeding intended to formulate agency action, and not to review action taken earlier or preliminarily. Florida Department of Transportation v. J.W.C. Co., Inc., 396 So.2d 778 (Fla. 1st DCA 1981). The CON review process is not designed to be piecemeal; rather, it is a unified process. HRS urges that there should be two acts of final agency action in this case: (1) the decision on whether or not to grant expedited review, and (2) a decision on whether the proposal meets the financial feasibility requirements of section 381.705(3). HRS offers no rationale for this two-tier review process and we can discern none.
At the hearing below, HRS was given the opportunity to be heard and to present evidence regarding the financial feasibility of Beverly's proposal. HRS chose not to present any evidence, and based upon the uncontradicted evidence presented by Beverly, the hearing officer found that Beverly's proposal was financially feasible. The hearing officer's findings in this regard are supported by competent, substantial evidence. Accordingly, HRS erroneously rejected these findings of fact, section 120.57(1)(b)10.
REVERSED and REMANDED for entry of an order consistent with this opinion.
NIMMONS and ALLEN, JJ., concur.
NOTES
[1] For convenience, the applicable statutory provisions are reproduced here:

381.705 Review criteria. 
(1) The department shall determine the reviewability of applications and shall review applications for certificate-of-need determinations for health care facilities and services, hospices, and health maintenance organizations in context with the following criteria:
* * * * * *
(3) For any application authorized by s. 381.706(2)(j) or (k) involving an approved facility based on a certificate-of-need application filed prior to December 31, 1984, the department shall approve such application unless the proposed consolidation or division would result in a facility or facilities not meeting the criterion of financial feasibility or unless the consolidation or division would result in beds or services being moved more than 15 miles from their original certificated location.
381.706 Projects subject to review. 
(1) APPLICABILITY.  Unless exempt pursuant to subsection (3), all health-care-related projects, as described in paragraphs (a)-(n), shall be subject to review and shall file an application for a certificate of need with the department. The department is exclusively responsible for determining whether a health-care-related project is subject to review under ss. 381.701-381.715.
(a) The addition of beds by new construction or alteration.
* * * * * *
(e) Any change in licensed bed capacity.
* * * * * *
(2) PROJECTS SUBJECT TO EXPEDITED REVIEW. Unless exempt pursuant to subsection (3), projects subject to an expedited review shall include, but not be limited to:
* * * * * *
(g) A transfer of a certificate of need.
* * * * * *
(j) Combination within one nursing home facility of the beds or services authorized by two or more certificates of need issued in the same planning subdistrict.
(3) EXEMPTIONS.  Upon request, supported by such documentation as the department may require, the department shall grant an exemption from the provisions of subsection (1):
(a) For any project which is specifically mandated by the Legislature to be undertaken by a specific provider and for which capital financing is funded by the Legislature.
(b) For any expenditure by or on behalf of a health care facility for any part of the physical plant which is not to be directly utilized for providing health services or housing health care providers. This exemption shall apply to expenditures for parking facilities, meeting rooms, cafeterias, administrative data processing facilities, research buildings, landscaping, and similar projects, but shall not apply to expenditures for office facilities for health care providers.
(c) For any expenditure to eliminate or prevent safety hazards as defined by federal, state, or local codes.
(d) For any expenditure to replace any part of a facility or equipment which is destroyed as a result of fire, civil disturbance, or storm or any other act of God.
(e) For any expenditure to acquire major medical equipment which is a substantially identical replacement for existing equipment being taken out of service.
(f) For the initiation or expansion of obstetric services after July 1, 1988.
(g) For any expenditure to replace or renovate any part of a licensed nursing facility, provided that the number of licensed beds will not increase and, in the case of a replacement facility, the project site is the same as the facility being replaced.
(h) For providing respite care services. "Respite care" means short-term care in a licensed health care facility which is personal or custodial in nature and is provided by reason of chronic illness, physical infirmity, or advanced age for the purpose of temporarily relieving family members of the burden of providing care and attendance in the home. In providing respite care, the health care facility shall become the primary care giver. An individual may be admitted to a respite care program in a hospital without regard to inpatient requirements relating to admitting order and attendance of a member of a medical staff.
381.710 Conditions and monitoring. 
(2)(d) If an application is filed to consolidate two or more certificates as authorized by s. 381.706(2)(j) or to divide a certificate of need into two or more facilities as authorized by s. 381.706(2)(k), the validity period of the certificate or certificates of need to be consolidated or divided shall be extended for the period beginning upon submission of the application and ending when final agency action and any appeal from such action has been concluded. However, no such suspension shall be effected if the application is withdrawn by the applicant.