582 So.2d 1193 (1991)
CENTRAL FLORIDA REGIONAL HOSPITAL, INC., Etc., Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, et al. Appellees.
No. 90-364.
District Court of Appeal of Florida, Fifth District.
June 6, 1991.
Rehearing Denied, Second Petition for Rehearing Stricken July 31, 1991.
John Beranek, John Radey and Elizabeth McArthur of Aurell, Radey, Hinkle & Thomas, Tallahassee, for appellant.
*1194 Robert T. Klingbeil, Jr. and John S. Koda of Boone, Boone, Klingbeil, Boone & Roberts, P.A., Venice, for appellee Adventist Health System/Sunbelt, Inc., d/b/a Florida Hosp.
Richard A. Patterson, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee HRS.
James C. Hauser and Christopher D. Rolle of Foley & Lardner, Tallahassee, for appellee Humana.
COBB, Judge.
The appellant, Central Florida Regional Hospital, Inc. (CFRH), challenges the denial by the Department of Health and Rehabilitative Services (HRS) of its application for a certificate of need (CON) to establish an open heart surgery program at its hospital in Sanford, Seminole County, Florida. A CON is a legal prerequisite to licensure and operation of a new health care facility or service. See § 381.711, Fla. Stat. (1987).
HRS initially found a need for five additional open heart surgery programs in HRS District VII for the Fall of 1988 CON review cycle. District VII includes Orange, Seminole, Brevard and Osceola Counties. In September, 1988, four existing hospitals within the district, including CFRH, filed CON applications to establish open heart surgery programs. When applications for the same health care services are submitted on a cycle basis they are "batched" together by HRS for a comparative review. CFRH and two other applicants were approved upon HRS's initial review. The applications were not reviewed on a competitive basis because the granting of one or more applications did not preclude granting any others at that time, given the initial determination that five were needed.
After HRS published notice of its intent to approve the three applications, an Orlando hospital, Orlando Regional Medical Center (ORMC), and two corporate hospital chains (Adventist and Humana) owning Orlando Hospitals with existing open heart surgery programs filed petitions pursuant to applicable statutes[1] challenging HRS approval of these applications. ORMC challenged all these applications while Adventist and Humana challenged only those filed by CFRH and a Winter Park hospital. The applicants  CFRH, Winter Park, and Wuesthoff Hospital in Brevard County  did not challenge each other, since they apparently were not in competition.
ORMC dismissed its challenges, which resulted in final approval by HRS of the Wuesthoff CON for an open heart surgery program in Brevard County since Wuesthoff had not been challenged by Adventist and Humana. This left CFRH and Winter Park, whose cases were then considered together by the Division of Administrative Hearings. HRS participated as a party and supported the need for the two new programs, one in Seminole County and one in Orange County.
After final hearing, the hearing officer denied both requested certificates based upon a new interpretation of the HRS open heart surgery need rule. Exceptions filed by CFRH and Winter Park were denied and a final order adopting the hearing officer's recommendation was adopted. That order is the subject of this administrative appeal by CFRH.
As pointed out by the appellant, HRS has had a rule in place since 1983 by which it judges CON applications for new open heart surgery programs. The numeric need standards, which must "normally" be met before a new open heart surgery program will be approved, are contained in Rule 10-5.011(1)(f)8. and 11., which provide as follows:
8. Need Determination. The need for open heart surgery programs in a service area shall be determined by computing the projected number of open heart surgical procedures in the service area. The following formula shall be used in this determination:
 N[x] = U[c] X P[x]
 Where:
 N[x] = Number of open heart procedures project for
 Year X;
*1195 U[c] = Actual use rate (number of procedures per
 hundred thousand population) in the service area
 for the 12 month period beginning 14 months prior
 to the Letter of Intent deadline for the batching
 cycle;
 P[x] = Projected population in the services area in
 Year X; and
 Year X = The year in which the proposed open heart
 surgery program would initiate service, but not
 more than two years into the future.
* * * * * *
11.a. There shall be no additional open heart surgery programs established unless:
(I) the service volume of each existing and approved open heart surgery program within the service area is operating at and is expected to continue to operate at a minimum of 350 adult open heart surgery cases per year... .
(II) the conditions specified in Sub-subparagraph 5.d. above [requiring an applicant to project a minimum of 200 procedures by the third year of operation], will be met by the proposed program.
b. No additional open heart surgery programs shall be approved which would reduce the volume of existing open heart surgery facilities below 350 open heart procedures annually ...
HRS has consistently interpreted the open heart surgery need standards in paragraphs 8 and 11 together to require two showings: (1) that all existing open heart surgery programs in the district are performing an average of at least 350 procedures currently; and (2) that the projected number of procedures calculated pursuant to the formula yields enough procedures so that in the target year, the number of procedures divided by 350 would be equal to or would exceed the number of existing and approved programs in the district after approval of the subject applications. This simply means that the average of all programs must be at or above 350 procedures.
The averaging approach for open heart surgery program need was reiterated by HRS in the Florida State Health Plan. That plan contains objectives for open heart surgery programs and states, as one of those objectives, the maintaining of an average of 350 open heart surgery procedures per program in each district through 1990.
The Florida State Health Plan is an integral part of HRS's need determination. Rule 10-5.011(1)(f)7. provides that "the provision of open heart surgery in the service area shall be consistent with the needs reflected in the local health plan and the Florida State Health Plan." Additionally, section 381.705(1)(a), Florida Statutes, requires that HRS review current applications "in relation to ... the State Health Plan... ." The provisions in the Rule and the State Health Plan were read by HRS in pari materia until the instant case. HRS has consistently interpreted and applied the "350 procedure rule" by averaging the number of open heart procedures between all of the existing programs within a given district. See, e.g., Sarasota County Public Hospital Board v. HRS, 11 F.A.L.R. 6248 (HRS Final Order Nov. 17, 1989); St. Josephs Hospital v. HRS, 11 F.A.L.R. 5795 (HRS Final Order, June 22, 1989); St. Mary's Hospital v. HRS, 9 F.A.L.R. 6159 (DOAH Final Order, Nov. 13, 1987).
In the instant case, HRS determined that there were four existing open heart surgery programs in hospitals in District 7 which performed at least 2,753 open heart surgical procedures in 1987-1988, for an average of at least 688 procedures. For the target year of 1990, HRS calculated that there would be 3,022 procedures, enough to support 8.6 programs averaging 350 procedures each. With only four existing programs, HRS concluded that there was a sufficient numeric need to approve all four of the applicants who were co-batched. CFRH and Wuesthoff were both initially approved by HRS on the basis of the same HRS application of its numeric need rule provisions in the same consolidated State Agency Action Report. Wuesthoff was then awarded a CON because the one petition challenging HRS's approval of its CON was dismissed. Wuesthoff's certificate was issued pursuant to the averaging approach on June 1, 1989.
At the hearing involving the CFRH, however, the hearing officer decided that the *1196 averaging approach was wrong and that, instead, each existing hospital had to be actually performing 350 procedures per year. In arriving at this determination, the hearing officer noted that the averaging method had been declared invalid because it was not adopted pursuant to section 120.54, Florida Statutes. Lakeland Regional Medical Center v. Department of Health and Rehabilitative Services, 11 F.A.L.R. 6463 (DOAH Final Order Nov. 15, 1989). The hearing officer concluded that one of the existing providers, Holmes, had done only 333 procedures instead of 350 procedures and thus concluded that the 350 procedure rule had been violated.
It is axiomatic that administrative due process requires agency consistency among like petitioners or respondents. Furthermore, needs must be fixed by HRS as of the application filing date and as such, HRS is precluded from changing the needs standard for a review cycle once the applications are filed. Meridian v. Department of Health and Rehabilitative Services, 548 So.2d 1169 (Fla. 1st DCA 1989). Generally, the same rules should apply to all batched applicants whether the applications are challenged or not. The need standard utilized for Wuesthoff should have been binding on the other co-batched applicants and opponents since it was not challenged. The Lakeland Regional interpretation of Rule 10-5.011 should not have been applied to this review cycle.[2] It is clear from the record that the Wuesthoff and CFRH applications were equally meritorious and that the new rule interpretation was the significant factor in HRS's final decision.[3]
REVERSED.
HARRIS and PETERSON, JJ., concur.
NOTES
[1] See §§ 120.57 & 381.709(5)(b), Fla. Stat. (1987).
[2] We also agree with the hearing officer that Rule 10-5.011(1)(f)11.a, FAC makes no sense on its face inasmuch as it requires that service volume for each existing and approved program operate at a minimum of 350 cases per year. Obviously, approved programs are not operating at all, or they would be considered existing.
[3] While the hearing officer gave other reasons for the denial, they are either insufficient or not factually supported by the record.