KAHN, Judge.
We have for review an award by the Agency for Health Care Administration (AHCA) of a Certificate of Need (CON) for an adult open heart surgery program in AHCA District 9 to appellee Martin Memorial Medical Center, Inc. We reverse because AHCA improperly opened the record after the administrative hearing in this case, and because it reweighed factual matters reserved for the hearing officer under Chapter 120, Florida Statutes.
District 9 is located generally along the southeast coast of Florida and includes from north to south, Indian River, Okeechobee, St. Lucie, Martin and Palm Beach counties. The applicants for this CON included Martin Memorial Medical Center, Inc. (Martin), Good Samaritan Hospital, Inc., St. Mary’s Hospital, Inc. (St.Mary’s) and appellant Lawnwood Regional Medical Center, Inc. (Lawnwood).
In July 1993, AHCA published its preliminary decision to issue CON 7243 for the adult open heart surgery program to Martin. The unsuccessful competing applicants, including Lawnwood, timely filed administrative challenges. In addition, appellant AMI-Palm Beach Gardens Medical Center, Inc. (PBG), and JFK Medical Center, Inc. (JFK) timely filed petitions to intervene in the administrative proceedings. JFK and PBG currently operate open heart programs in Palm Beach, in the southernmost part of District 9. JFK opposed the application filed by St. Mary’s Hospital, also located in Palm Beach County, *423 and PBG opposed any new adult open heart surgery program in District 9.
After hearing all of the testimony and examining all of the evidence, hearing officer Eleanor Hunter issued a recommended final order on March 13, 1995, in which she set forth a detailed comparison of the applicants based upon a review of section 408.035, Florida Statutes (1993). The hearing officer first reviewed the need for health care facilities and services in relation to the applicable district and state health plans as required by section 408.035(l)(a). Four of the six preferences contained in the 1989 state health plan, Healthy Floridians, favored Lawnwood in the hearing officer’s view. The other two criteria applied equally to Lawnwood and Marita.[1] The hearing officer then examined the two District 9 health plan allocation factors. The first factor gives priority to established cardiac catheterization programs. Both Martin and Lawnwood have established programs which exceed the 150 procedures minimum volume with Martin having a higher volume in an operational inpatient and outpatient lab. The other District 9 factor favors applicants with a documented commitment to provide services regardless of the patient’s ability to pay. Lawnwood better met this factor in both the Medicaid and charity care categories. The hearing officer noted that more Medicaid recipients live in the primary service area of Lawnwood than that of Martin. She noted prior CON compliance reports filed by Martin demonstrating difficulty in meeting applicable Medicaid levels due to the demographics of Martin’s service area.
The hearing officer next reviewed each of the criteria for comparison established by section 408.035(l)(b)-(o). Several criteria either did not apply or were neutral, since they were met by both Lawnwood and Martin. At least two of the statutory criteria, however, did not apply equally.
Reviewing section 408.035(l)(i), the hearing officer found that the existing open heart program at PBG would suffer an adverse impact from the approval of a program at Martin. Although PBG’s program would remain profitable, it would experience, based upon the evidence, losses in a range between $2.8 and $3.1 million. The hearing officer concluded that PBG would be disproportionately adversely affected by a program at Martin. The hearing officer also ranked Lawnwood over Martin on the criteria in section 408.035(l)(n) which addresses applicant’s past and proposed provision of health care services to Medicaid patients and medically indigent.
AHCA’s Division Director, Dr. James Howell, testified he was told by staff that it was a “toss up” between Lawnwood and Martin for the CON. Dr. Howell recommended Martin because “Martin is a long-term community hospital with local community responsiveness or local community board of directors.... I felt more comfortable with giving the first CON in the area to a group that had a long heritage and commitment to the area.”
The hearing officer also recognized the close comparability of Lawnwood and Martin. She determined, however:
Lawnwood is better situated to reverse district out-migration (of patients), and has to be preferred, under the state and local health plans and subsection 408.035(l)(n), Florida Statutes, for its history of providing a disproportionate share of its services to Medicaid and charity patients. Finally, the most significant distinction between the applicants is that the quality of care at existing providers, as measured by their volumes of open heart surgeries, will not be adversely affected by the approval of a new program at Lawnwood.
Despite the testimony offered by Dr. Howell, the hearing officer did not find that Martin’s management was more stable than Lawn-wood’s or better suited for an open heart program. Accordingly, the hearing officer recommended that AHCA enter a final order issuing the CON to Lawnwood and denying Martin’s application.
*424 Several weeks after the recommended order was issued, Martin filed a Motion for Official Recognition. Martin alleged in this motion that since the issuance of the recommended order, a consolidation of ownership of hospitals presently providing open heart surgery in District 9 resulted in only two for-profit corporations, one of which, Columbia/HCA, owns Lawnwood. With its motion Martin tendered three documents generated after the recommended order. These documents suggested that as a result of various mergers and acquisitions of hospitals in the district, Lawnwood would be commonly owned by Columbia/HCA, the company which also will own JFK, an existing open heart surgery provider. The documents also showed that a new company, Tenet Health Care Corporation, would control the other two existing providers in the district. The agency took official notice of these documents without a remand to the hearing officer for reopening the record.
In its final order, AHCA stated that the weight to be given to each statutory review criterion in a given case is a policy determination, and the deference an agency must give an ordinary fact finding by a hearing officer is not applicable to the weighing of the review criteria. The agency director, in the final order, went on to state:
I respect and appreciate the diligence and consideration given by the hearing officer in this case, but I disagree with the policy weight given in her application of the review criteria regarding the merits of the competing proposals of Lawnwood and Martin Memorial. I concur with Dr. Howell that Martin Memorial’s long standing presence in the community (since 1939), stability of management, and board of directors made up of volunteers from the community are deserving of greater weight. These considerations are relevant under the criteria of section 408.035(l)(c), (h) and (i), Florida Statutes.... Another key consideration favoring Martin Memorial is the hearing officer’s acceptance of the agency’s proposed finding that Martin Memorial’s proposed program is more likely to achieve the critical quality threshold of 350 procedures annually than Lawnwood’s. I give less weight to Lawnwood’s central location in the “northern” counties. Martin Memorial would place its proposed program at its hospital in Stuart, the county seat of Martin County; Lawnwood would place its proposed program at its hospital in Fort Pierce, the county seat of St. Lucie County. The distance between the two hospitals is not significant, especially in light of the fact that open heart surgery is tertiary service. Also of lesser consideration is the impact on the existing program at Palm Beach Garden and Lawnwood’s history of service to Medicaid patients. The hearing officer made no finding that a program at Martin Memorial would likely cause Palm Beach Garden’s number of open heart procedures to fall below the quality threshold of 350 annually, and she accepted Martin Memorial’s proposed finding that there would be no such conse-quence_ Regarding service to Medicaid patients, most open heart surgery is done on persons in the age category covered by Medicare. Statewide, Medicaid covers only 2.4% of the open heart surgeries, and in District 9 only 0.9%_ Although Medicaid service is not entitled to the weight given by the hearing officer in light of the service being proposed, it is worth noting that Martin Memorial showed that it treated a larger proportion of Medicaid patients with circulatory disease than Lawnwood....
Finally, were the agency to approve Lawn-wood’s application it would result in the consolidation of the four open heart surgery programs in the district in only two for profit hospital chains as a result of the imminent acquisition of JFK, previously a not-for-profit institution by Columbia/HCA and the completed merger of NME and AMH, putting Delray Community Hospital and Palm Beach Gardens under common ownership. The consolidation of open heart surgery in the district in just two competitions is cause for concern and is inconsistent with the statutory criteria for approval. On the other hand, approval of Martin Memorial would foster additional competition in this merger.
AHCA approved Martin’s CON application and denied Lawnwood’s application. Lawn- *425 wood and PGB now challenge AHCA’s final order.
We first hold that AHCA erred by reopening the record to take selective official recognition and make additional findings of fact. At Martin’s request and over objection, AHCA reopened the record to officially recognize that Columbia/HCA sought regulatory approval to acquire JFK. AHCA also officially recognized that the other two open heart surgery providers were now under common ownership. Not only did AHCA admit new evidence, but in order to make the evidence relevant to the review criteria cited by AHCA’s director in the final order, the agency drew inferences leading to findings of fact from the newly admitted evidence. Specifically, AHCA concluded, “The consolidation of open heart surgery in the district in just two competitors is cause for concern and is inconsistent with the statutory criteria for approval. On the other hand approval of Martin Memorial would foster additional competition.... ”
Chapter 120, Florida Statutes, directs an agency to review a recommended order based on the record that was before the hearing officer. An agency is not authorized by section 120.57(l)(b)10 to reopen the record, receive additional evidence and make additional findings. Henderson Signs v. Florida Dep’t of Transp., 397 So.2d 769, 772 (Fla. 1st DCA 1981). Official recognition is not a device for agencies to circumvent the hearing officer’s findings of fact by building a new record on which to make new findings. See Florida Dep’t of Transp. v. J.W.C. Co., Inc., 396 So.2d 778 (Fla. 1st DCA 1981). While AHCA could have rejected or modified any finding not supported by competent substantial evidence, the agency identified no such findings, and, accordingly, violated seetion 120.57(l)(b)10 by making its own findings in order to change or supplement the hearing officer’s findings.[2] In disapproving AHCA’s practice in this case, we echo a concern expressed earlier by this court that “to allow a party to produce additional evidence after the conclusion of an administrative hearing below would set in motion a never ending process of confrontation and cross-examination, rebuttal and surrebuttal evidence, a result not contemplated by [Chapter 120].” Collier Medical Ctr., Inc. v. Department of HRS, 462 So.2d 83, 86 (Fla. 1st DCA 1985). The agency improperly received Martin’s document and improperly engaged in fact finding by way of inferences drawn from these documents.
We also hold that AHCA improperly reweighed the evidence and recast the findings of fact as policy questions. The hearing officer reviewed the statutory criteria under section 408.035(1), and found that those criteria that applied favored Lawn-wood. An agency cannot reject a hearing officer’s findings of fact by treating the issue as one of policy; rather, the agency’s function is to apply its policy to the facts which are supported by competent substantial evidence. Balsam v. Department of HRS, 486 So.2d 1341 (Fla. 1st DCA 1986).
AHCA in essence argues that the award of a certificate of need is always a policy determination that should be made by the agency with expertise, that being, of course, AHCA. Although we have certainly not ignored or overlooked this argument, we must follow the law. A petition for a section 120.57 hearing commences a de novo proceeding at which the applicant will carry the burden of proving that it meets the statutory criteria and is entitled to a certificate of *426 need. See, Boca Raton Artificial Kidney Ctr., Inc. v. Department of HRS, 475 So.2d 260, 262 (Fla. 1st DCA 1985) (“To allow an applicant to operate a health care facility-based solely on the preliminary determination of the agency is tantamount to presuming that the preliminary decision of the agency is correct. Such policy also fails to recognize the proper role of Section 120.57 hearings in the administrative process, i.e., such hearings are to aid in the formulation of final agency action and are not intended solely for review of action taken earlier and prehminarily.”); see also, Beverly Enters-Florida v. Department of HRS, 573 So.2d 19, 23 (Fla. 1st DCA 1990) (“request for a formal administrative hearing commences a de novo proceeding intended to formulate agency action.”). Perhaps in a proper case AHCA might attribute greater weight to certain of the review criteria than that attributed by the hearing officer. The fact is, however, that in this particular case AHCA did not merely reprioritize the criteria; it recast the facts. This is a necessary conclusion because Lawnwood’s application, in the eyes of the hearing officer, surpassed that of Martin as to each of the applicable criteria. Given the hearing officer’s findings of fact as to the review criteria, AHCA’s policy argument vanishes.
REVERSED and REMANDED for entry of an order consistent with the recommended order.
ALLEN and DAVTS, JJ., concur.

. Among the original CON applicants, Good Samaritan voluntarily dismissed its petition before the hearing, and St. Mary’s has not pursued an appeal of AHCA's final order. Therefore the relevant comparisons are those between Martin and Lawnwood.

. The agency, in its final order, found facts totally at odds with the facts found in the recommended order and nominally adopted by AHCA. For instance, the agency director found the hearing officer accepted Martin Memorial's proposed finding that its proposed program is more likely to achieve the critical quality threshold of 350 procedures annually than Lawnwood’s proposed program. However, in the recommended order, the hearing officer found both Martin Memorial and Lawnwood reasonably demonstrated their ability to perform at least 350 annual procedures within three years of initiating an open heart program and, in fact, found Lawnwood would reach that threshold one year before Martin Memorial. The hearing officer also concluded that Lawnwood's application best meets the criteria for approval of a new District 9 adult open heart surgery program based on "the type of institution and the details of the proposed project, including its history of Medicaid and charity service, and reasonable projection of volume and financial feasibility.”