BRENDA B. MARTIN, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH
AND HUMAN SERVICES, Respondent

No. COA08-259

(Filed 6 January 2009)

**Public Assistance— Medicaid—benefits denied—income eligibility—definition of family**

> The trial court did not err by reversing DHHS and reinstating petitioner's benefits under Medicaid for the Qualified Beneficiary Part B (MQB-B) where petitioner and her spouse were both disabled and depended on her social security disability income. DHHS's interpretation of the federal statutes concerning MQB eligibility utilizes social security (SSI) methodology in determination of the meaning of family, but that methodology does not define "a family of the size involved." The termination of petitioner's benefits may effectively prevent petitioner from being able to afford medical care, a result that cannot be reconciled with the purpose of the Medicaid Act.

Appeal by respondent agency from order entered 21 November 2007 by Judge Ronald K. Payne in Buncombe County Superior Court. Heard in the Court of Appeals 6 October 2008.

> *Legal Aid of North Carolina, by Angeleigh Dorsey and Emma G. Clark, and Legal Services of Southern Piedmont, by Douglas Stuart Sea, for petitioner-appellee.*

> *Roy Cooper, Attorney General, by Belinda A. Smith, Special Deputy Attorney General, for respondent-appellant Department of Health and Human Services.*

MARTIN, Chief Judge.

The North Carolina Department of Health and Human Services ("DHHS") appeals from the 21 November 2007 order reversing the final agency decision to terminate Medicaid for the Qualified Beneficiary Part B ("MQB-B") benefits of petitioner-appellee Brenda Martin ("petitioner"). We affirm.

On 1 March 2006, petitioner applied for MQB-B for herself and Medicaid for the Disabled ("MA-D") for herself and her husband at the Buncombe County Department of Social Services ("DSS"). Petitioner is a Medicare beneficiary and MQB-B is a Medicaid eligi-

MARTIN v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[194 N.C. App. 716 (2009)]

bility category for Medicare beneficiaries who need help paying their Medicare Part B premiums. At the time of her application, petitioner's Medicare premiums were $88.50 per month and her only income was a monthly Social Security Disability check for $1,216. Petitioner's husband, a veteran who receives no pension, is not a Medicare beneficiary, is not eligible for Social Security Disability because he did not work enough quarters in the private sector, and has no income. Additionally, petitioner's husband is not eligible for benefits from the Veteran's Administration ("VA") or for Supplemental Security Income ("SSI"), an indigent disability program of the Social Security Administration ("SSA"), due to his wife's disability income. However, the VA does pay for most of his medical care. Otherwise, petitioner supports herself and her husband, the only members of their household, with her monthly $1,216 Social Security check.

While the MA-D applications were pending, petitioner received a notice from DHHS approving her MQB-B application and indicating that her Medicare Part B premiums for the period 1 December 2005 through 28 February 2007 would be paid. As part of the application process for the MA-D Medicaid assistance, petitioner's husband was determined disabled by the Disability Determination Service, the state agency charged with making disability determinations in North Carolina for the state Medicaid and the federal SSA programs. However, on 23 May 2006, DSS notified petitioner and her husband that their applications for full MA-D were denied because, given petitioner's income, their medical expenses did not indicate they would meet the deductible of $5,274 within the six month certification period. Buncombe County DSS also informed petitioner that her MQB-B benefits would terminate on 30 June 2006 because her monthly income of $1,216 was over the MQB-B income limit of $980 per month for a single individual.

In terminating petitioner's MQB-B benefits, Buncombe County DSS acted pursuant to administrative rules promulgated by DHHS. Under these rules, "income counted in the determination of financial eligibility is based on standards and methodologies in Title XVI of the Social Security Act[, the SSI program]." N.C. Admin. Code 10A 21B.0312(c) (June 2004). Pursuant to these SSI methodologies, the rules provide that "[t]he income level to be applied for Qualified Medicare Beneficiaries described in 42 U.S.C. 1396d . . . is based on the income level for one; or two for a married couple who live together and both receive Medicare." N.C. Admin. Code 10A 21B.0312(e)(4) (June 2004). DHHS's State Adult Medicaid Manual

incorporates these rules, acting as a functional guide to DHHS employees for the administration of the MQB-B program. According to the manual, a "Medicaid couple" consists of Medicaid applicants or recipients who are married and living together. If the total combined income of the spouses exceeds $1,320, they will be ineligible for MQB-B benefits. However, if only one spouse is eligible for Medicare, the manual provides that the spouse is considered a "Medicaid individual with an Ineligible Spouse." In this case, the income of the ineligible spouse will be "deemed," or imputed, to the eligible spouse. If the total combined income of the eligible spouse and ineligible spouse exceeds $980, the eligible spouse will receive no MQB-B benefits. Because petitioner's husband's MA-D application was denied, Buncombe County DSS reassessed petitioner's MQB-B eligibility utilizing the income limit for an individual with an ineligible spouse, and consequently denied petitioner MQB-B benefits.

Petitioner subsequently appealed the termination of benefits at the local and state agency levels. Both local and state hearing officers affirmed Buncombe County DSS's decision. Petitioner then appealed to DHHS's chief hearing officer, and the final agency decision, issued 8 December 2006, also affirmed the termination of benefits. Pursuant to N.C.G.S. § 108A-79(k), petitioner appealed the final agency decision to the Buncombe County Superior Court. In her petition for judicial review, petitioner argued that DHHS erred by incorrectly calculating petitioner's income and resources as an individual rather than by her actual family size as established by 42 U.S.C. § 1396d. The appeal was heard by the superior court on 5 September 2007. On 21 November 2007, the court issued an order reversing DHHS's final decision. The superior court's order included the following conclusions of law:

2. The federal Medicaid statute applicable to a qualified medicare beneficiary directs the state to measure an applicant's income against the official poverty level for the number of family members. 42 U.S.C. 1396d(p).

3. A "family of the size involved" as found at 42 U.S.C. 1396d(p) includes an MQB-B applicant and the applicant's spouse living in the same household who is dependent on the applicant for financial support.

4. Substantial evidence of the record established that Petitioner and her spouse were both disabled, married to each other, and

dependent on her social security disability income within the meaning of 42 U.S.C. § 1396d(p) and 20 C.F.R. § 416.120.

5. [DHHS]'s policy of determining income and resource eligibility for married individuals applying for the MQB-B program violates federal Medicaid statutes and regulations found at 42 U.S.C. § 1396d and 20 C.F.R. § 416.120.

6. Based on the foregoing, [DHHS] acted erroneously when it terminated Petitioner's MQB-B benefits.

Subsequent to the superior court's order, DHHS filed notice of appeal.

On appeal, DHHS assigns error to the superior court's conclusion that DHHS's policy for determining income and resource eligibility violates federal statutes and regulations. Specifically, DHHS argues that, as found in 42 U.S.C. § 1396d, "family size" is a term of art and thus petitioner's income level should be based on a family size of one. We disagree.

"Questions of statutory interpretation are questions of law, which are reviewed *de novo* by an appellate court." *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559, 589 S.E.2d 179, 180 (2003). "The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990). Where the language of a statute is clear, the courts must give the statute its plain meaning; however, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent. *See id.* Moreover, we must be guided by the "fundamental rule of statutory construction that statutes in pari materia, and all parts thereof, should be construed together and compared with each other." *Redevelopment Comm'n v. Sec. Nat'l Bank*, 252 N.C. 595, 610, 114 S.E.2d 688, 698 (1960). Such statutes should be reconciled with each other when possible and any irreconcilable ambiguity should be resolved in a manner which most fully effectuates the true legislative intent. *See Duncan v. Carpenter & Phillips*, 233 N.C. 422, 426, 64 S.E.2d 410, 413 (1951), *overruled on other grounds by Taylor v. J.P. Stevens & Co.*, 300 N.C. 94, 265 S.E.2d 144 (1980).

"Although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding." *Total Renal*

*Care of N.C., LLC v. N.C. Dep't. of Health & Hum. Servs.*, 171 N.C. App. 734, 740, 615 S.E.2d 81, 85 (2005). "The weight of such an interpretation in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* A "state agency's interpretation of federal statutes is not entitled to the deference afforded a federal agency's interpretation of its own statutes." *GTE South, Inc. v. Morrison*, 199 F.3d 733, 745 (4th Cir. 1999); *Three Lower Counties Cmty. Health Servs., Inc. v. Maryland*, 498 F.3d 294, 302 n.2 (4th Cir. 2007). However, where terms of a statute have been interpreted by the governing federal agency in a published regulation, that interpretation is entitled to great deference. *See Chevron U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837, 844, 81 L. Ed. 2d 694, 703 (1984).

Medicaid is a federal program designed to provide health care funding for the needy. *See Luna v. Div. of Soc. Servs.*, 162 N.C. App. 1, 4, 589 S.E.2d 917, 919 (2004). Medicaid is a joint program administered by participating states and overseen by the federal government. *See id.* Although Medicaid is funded in part by the states, North Carolina must abide by federal eligibility requirements or risk losing its Medicaid reimbursement from the federal government. *See* 42 U.S.C. § 1396a (2000); *see also Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 386, 628 S.E.2d 1, 3 (2006). North Carolina's Medicaid plan describes the nature and scope of its Medicaid program and gives assurance that it will be administered in conformity with specific federal statutory requirements and other applicable official issuances of the federal Department of Health and Human Services. *See* 42 C.F.R. § 430.10 (2006). The State Plan does not incorporate the State Adult Medicaid Manual; the manual acts instead as an internal instructional reference for DHHS employees in the application of DHHS policy and interpretation of federal Medicaid requirements.

North Carolina's participation in the Medicaid program includes the administration of the Medicare Savings Programs known as MQB-Q and MQB-B programs. MQB-Q pays a recipient's Part B premium, deductibles and copayments. 42 U.S.C. § 1396a(a)(10)(E)(i) (2000). MQB-B pays a recipient's Medicare Part B premium only. *See* 42 U.S.C. § 1396a(a)(10)(E)(iii). The MQB-B program requires the State to purchase Medicare Part B premiums for individuals who receive Medicare and whose family income is under 120 percent of the Federal Poverty Level. *See id.* The criteria set forth by Congress

for MQB eligibility can be found in Title 42 of the U.S. Code. Section 1396d(p) of that title provides:

(1) The term "qualified medicare beneficiary" means an individual—

. . . .

(B) whose income (as determined under section 1612 [42 U.S.C. § 1382a] for purposes of the supplemental security income program, except as provided in paragraph (2)(D)) does not exceed an income level established by the State consistent with paragraph (2), and

(C) whose resources (as determined under section 1613 [42 U.S.C. § 1382b] for purposes of the supplemental security income program) do not exceed twice the maximum amount of resources that an individual may have and obtain benefits under that program . . . .

(2)(A)  The income level established under paragraph (1)(B) shall be at least the percent provided under subparagraph (B) (but not more than 100 percent) of the official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 673(2) of the Omnibus Reconciliation Act of 1981 [42 U.S.C. § 9902(2)]) *applicable to a family of the size involved.*

42 U.S.C. § 1396d(p) (2000) (emphasis added). This portion of Title 42 defines eligibility requirements for the MQB-Q program. Congress later directed states to provide MQB-B coverage to individuals who qualify for MQB-Q benefits as described above, save for the fact that their family income exceeds 100% of poverty but is less than 120% of the federal poverty guidelines "for a family of the size involved." *See* 42 U.S.C. § 1396a(a)(10)(E)(iii) (2000). Thus, to determine MQB-B eligibility, the State must measure an MQB-B applicant's countable income against 120% of the official poverty level for "a family of the size involved." *See id.*

We note that DHHS's interpretation of 42 U.S.C. § 1396d(p) utilizes SSI methodology in its determination of the meaning of "family of the size involved." The SSI methodology referred to in paragraphs(1)(B) and (1)(C) of 42 U.S.C. § 1396d(p) is the language upon which DHHS has based its promulgation of 10A N.C.A.C. 21B.0312(e)(4). This methodology does not address the meaning of

"family," but rather treats applicants and recipients in terms of "eligible individuals" who may or may not have eligible spouses. *See* 42 U.S.C. § 1382(a) (2000). Under SSI regulations, "couple means an eligible individual and his eligible spouse." 20 C.F.R. § 416.120(c)(5) (2006). Under 20 C.F.R. § 416.1801(c), a person is only considered to be married to an eligible spouse for SSI methodology purposes if the spouse is eligible for SSI. *See* 20 C.F.R. § 416.1801(c) (2006). The SSI definition of "couple" thus functions as a term of art rather than a descriptive or practical reference.

Our reading of 42 U.S.C. § 1396d(p) reveals, however, that SSI methodology applies only to determinations of *income* discussed in paragraphs (1)(B) and (1)(C). *Income level*, as provided for in paragraph (2)(A), is not determined by SSI methodology, but instead is to be determined in part by "the percent provided under subparagraph (B) . . . of the official poverty line . . . applicable to a family of the size involved." 42 U.S.C. § 1396d(p)(2)(A). This aspect of the statute is not ambiguous. However, Title 42 does not define "a family of the size involved."

Where a statute does not define a term, we must rely on the common and ordinary meaning of the words used. *See Lafayette Transp. Serv., Inc. v. County of Robeson*, 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973). A family is defined as "a group consisting of parents and their children; a group of persons who live together and have a shared commitment to a domestic relationship." Black's Law Dictionary 637 (8th ed. 2004). Under this definition, petitioner's family would include her disabled husband who lives with her and relies on her for financial support. This plain reading of the statute is supported by a mandate to liberally construe the statute in order to provide disability payments for all qualified persons. *See Rowe v. Finch*, 427 F.2d 417, 419 (4th Cir. 1970). Such a reading is also supported by our Supreme Court's holding that "courts may use subsequent enactments or amendments as an aid in arriving at the correct meaning of a prior statute by utilizing the natural inferences arising out of the legislative history as it continues to evolve." *Burgess*, 326 N.C. at 216, 388 S.E.2d at 141.

The most recent addition to the Medicare program, Medicare Part D, utilizes language identical to that of 42 U.S.C. § 1396d(p)(2)(A) to determine eligibility for that program. The relevant portion of the Medicare Part D statute provides: "In the case of a subsidy eligible individual . . . who is determined to have income that is below 135 percent of the poverty line *applicable to a family of the size in-*

*volved* and who meets the resource requirement . . . ." 42 U.S.C. § 1395w-114(a)(1) (2003) (emphasis added). Like U.S.C. § 1395(p)(2)(A), this portion of 42 U.S.C. § 1395w-114 makes no reference to SSI methodology. The federal Department of Health and Human Services has published regulations interpreting 42 U.S.C. § 1395w-114(a)(1) as follows:

> family size means the applicant, the spouse who is living in the same household, if any and the number of individuals who are related to the applicant or applicants, who are living in the same household and who are dependent on the applicant or the applicant's spouse for at least one-half of their financial support.

42 C.F.R. § 423.772 (2005). Although the federal Department of Health and Human Services' interpretation of 42 U.S.C. § 1395w-114(a)(1) does not control our interpretation of 42 U.S.C. § 1395(p)(2)(A), we find it persuasive, due to its similarity to our understanding of the plain meaning of "family of the size involved" as found in 42 U.S.C. 1395(p)(2)(A).

We also note that, in the case before us, DHHS's interpretation of 42 U.S.C. § 1396d and 20 C.F.R. § 416.120 has led to absurd results. Here, pursuant to DHHS policy, DSS first denied petitioner's husband MA-D benefits based on the deductible and income amounts for a couple. Next, still acting pursuant to DHHS policy, DSS reassessed petitioner's MQB-B application based on the income level for an individual and subsequently terminated petitioner's MQB-B benefits, knowing that petitioner and her husband were both disabled and solely dependent on petitioner's monthly income from Social Security Disability. Although, because of VA assistance, petitioner's husband does not have medical bills, petitioner assuredly does. The termination of petitioner's benefits may effectively prevent petitioner from being able to afford medical care. We cannot reconcile such a result with the Medicaid Act's purpose of furnishing medical assistance to disabled individuals whose income and resources are insufficient to meet the costs of necessary medical services. *See* 42 U.S.C. § 1396 (2000).

DHHS contends that, should we affirm the superior court's ruling that DHHS's policy of determining income eligibility for married individuals applying for the MQB-B program violates 42 U.S.C. § 1396d and 20 C.F.R. § 416.120, DHHS would be in violation of its federally approved Medicaid plan. This argument is without merit.

First of all, the State is protected from losing its federal funding by federal Medicaid regulations, which provide that federal financial participation is available for expenditures for services provided under a court order. *See* 42 C.F.R. § 431.250(b)2 (2006) (providing that federal financial participation is available in expenditures for "services provided within the scope of the Federal Medicaid program and made under a court order."). Here, DHHS opposed the expenditure of providing petitioner with MQB-B benefits until the superior court issued its order overturning DHHS's final agency decision. As such, there is no risk of the State losing federal funding due to noncompliance with its Medicaid State plan as a result of this case.

We also note that, on 9 August 2006, DHHS gave notice of a final decision in a case, marked as Case No. Q46310 in the record on appeal, with facts similar to the case at bar. DHHS's decision in that case was inapposite to its final decision in the case now before us. In the 2006 case, DHHS concluded that the "Federal Medicaid statute directs the state to measure an MQB applicant's income against the poverty level for the number of family members the applicant must support." "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30, 94 L. Ed. 2d 434, 457 n.30 (1987). As such, DHHS's current interpretation of 42 U.S.C. § 1396d, viewed in light of its 2006 decision and the pronouncements of the federal Department of Health and Human Services, is entitled to significantly less deference than DHHS asserts.

Because we find that DHHS's interpretation is not in keeping with the plain meaning of the language used in 42 U.S.C. § 1396d and 20 C.F.R. § 416.120 as well as contrary to the purpose of the Medicaid Act, we must conclude that it violates the federal guidelines for Medicaid. Accordingly, the superior court correctly reversed DHHS's decision and ordered MQB-B benefits reinstated to petitioner.

Affirmed.

Judges McGEE and STEPHENS concur.