LaROSE, Judge.
Robert M. Winick appeals a hearing officer’s final order affirming the Department of Children and Family Services’ (DCF) decision not to pay Mr. Winick’s Medicare Part B premium under the “Qualified Individuals 1” (QI-1) Medicaid Program. We have jurisdiction. § 120.68, Fla. Stat. (2012); Fla. R. App. P. 9.030(b)(1)(C). DCF’s methodology to determine Mr. Win-ick’s eligibility violated federal guidelines. More specifically, DCF improperly assessed his application based on the income limit for a one-person household when he lives with his wife in a two-person household. Consequently, we reverse.
During 2012, Mr. Winick’s Medicare Part B premiums were paid through a federally mandated program, administered by DCF, that pays the premiums for low-income Medicare Part A participants whose income is too high to obtain Medicaid benefits. The Ql-1 program is one of four types of “Medicare cost-sharing” or “Medicare buy-in (MBI)” programs available under 42 U.S.C. § 1396a(a)(10)(E) (2012). Ql-1 pays Medicare Part B premiums for qualified individuals with incomes ranging from 120 to 135% of the federal poverty level. See also 42 U.S.C. § 1396d(p)(1)(B), (2)(A), (3) (defining medical cost-sharing programs); Tex. Gray Panthers v. Thompson, 139 F.Supp.2d 66, 69-70 (D.D.C.2001) (discussing history of MBI programs), vacated on other grounds, 37 Fed.Appx. 542 (D.C.Cir.2002).
In late 2012, Mr Winick applied to recer-tify his eligibility for continued benefits. DCF denied benefits, asserting that his income was too high. At Mr. Winick’s request, DCF sent him a copy of Florida Administrative Code Rule 65A-1.713, the purported basis for its decision. The rule did little to explain DCF’s rationale. Accordingly, Mr. Winick requested a hearing to contest DCF’s decision.
Mr. Winick appeared pro se at a telephone hearing in early 2013. A DCF “economic self-sufficiency specialist” testified that DCF used the ACCESS Florida Program Policy Manual to assess his eligibility. The Manual reflects DCF’s interpretation of the federal statutory guidelines and Florida Administrative Code rules. The Manual described the Ql-1 Medicare cost-sharing programs in section 0240.0116:
This program allows eligible individuals to have Medicaid pay the Medicare Part B premiums. This is a program with limited funding. It is available on a first-come, first-serve basis.
*467 To be eligible for QI-1, an individual must:
1. Be enrolled in Medicare Part A.'
2. Meet all technical criteria, except being aged (65 or older requirement) or disabled.
3. Income Limit: Between 120% and 135% of Federal Poverty Level.
4. Asset Limit: Three times the SSI resource limit with annual increases based on the yearly Consumer Price Index....
DCF relied on the following Manual sections to assess Mr. Winick’s income:
2240.0610 Couple/One'Requests Medicaid....
[[Image here]]
If an individual is living with their spouse and only one is requesting or receiving Medicaid (or the spouse does not meet the technical criteria for the program), the income and assets must be deemed from the spouse who is not requesting assistance (or who does not meet the technical criteria). If there is not enough income to be deemed, the income standard for one is used. 2240.0611 Couple/Both Request Medicaid....
[[Image here]]
If an eligible individual is living with an eligible spouse, the income standard for two must be used. Eligibility as a couple must be determined using both spouses’ income and assets.... If an eligible individual is living with their ineligible spouse, the income and assets must be deemed from the spouse who is not eligible for or requesting assistance.
If there is not enough income to be deemed, the income standard for one must be used.
Mrs. Winick was “ineligible” for the QI-1 program; she was not a Medicare Part A recipient and had no income. Accordingly, because Mr. Winick’s monthly income exceeded the $1293 income limit for a one-person household, DCF denied further benefits. DCF did not dispute that his income was within the eligibility limit for a two-person household. The hearing officer upheld DCF’s denial based on the Manual. Mr. Winick appealed.

Formal Rulemaking Not Required

Mr. Winick argues that the hearing officer erred in affirming DCF’s use of the one-person-household income limit. We note that DCF has not adopted the Manual as a rule.[1] Formal rulemaking is required if an interpretive rule “purports in and of itself to create certain rights ... or to require compliance, or otherwise to have the direct and consistent effect of law.” Dep’t of Natural Res. v. Wingfield Dev. Co., 581 So.2d 193, 196 (Fla. 1st DCA 1991); cf. S.D. v. Ubbelohde, 330 F.3d 1014, 1028 (8th Cir.2003) (“Where a policy statement purports to create substantive requirements, it can be a legislative rule regardless of the agency’s characterization.” (citing Syncor Int’l Corp. v. Shalala, 127 F.3d 90, 94 (D.C.Cir.1997))). Formal rulemaking is not required when an agency issues an interpretive rule that “d[oes] not create any new law, right, duty, or have any effect independent of the statute,” but instead “‘reflects an agency’s construction of a statute that has been entrusted to the agency to administer’ and *468 does not ‘modify] or add [] to a legal norm based on the agency’s own authority.’ ” Warshauer v. Solis, 577 F.3d 1330, 1337 (11th Cir.2009) (quoting Syncor, 127 F.3d at 94-95).
[A]n agency interpretation of a statute which simply reiterates the legislature’s statutory mandate and does not place upon the statute an interpretation that is not readily apparent from its literal reading, nor in and of itself purport to create rights, or require compliance, or .to otherwise have the direct and consistent effect of the law, is not an unpro-mulgated rule, and actions based upon such an interpretation are permissible without requiring an agency to go through rulemaking.
St. Francis Hosp., Inc. v. Dep’t of Health & Rehabilitative Servs., 553 So.2d 1351, 1354 (Fla. 1st DCA 1989); see also Couch v. Div. of Family Servs., 795 S.W.2d 91, 93 (Mo.Ct.App.1990) (holding Income Maintenance Manual was not a compilation of rules, but a guide reflecting policies division used in determining eligibility for benefits including medical assistance); accord J.P. v. Family Support Div., 318 S.W.3d 140, 143 n. 4 (Mo.Ct.App.2010); Rennich v. Dep’t of Human Servs., 756 N.W.2d 182, 188 (N.D.2008) (holding Department’s manual explaining federally-mandated Medicaid eligibility criteria did not have to be promulgated as formal rules).[2]
DCF represented the Manual as an interpretative aid;[3] the Manual created no substantive requirements. As the hearing officer concluded without DCF objection, the Manual “is not going to be necessarily administratively noticed as it is an interpretation of what is believed to be statutory and Administrative Code Rules.”

Formal Rule Challenge Not Required

DCF’s only argument on appeal is that we lack jurisdiction because Mr. Winick did not challenge the Manual as an unpromulgated rule. See § 120.56, Fla. Stat. (2012).[4] Curiously, DCF does not concede that the Manual is an unpromul-gated rule. It merely attempts to oust our jurisdiction. We are not swayed.
Mr. Winick’s argument at the telephonic hearing that the eligibility requirements were unreasonable, improper, and unsupported by statutory authority, sufficiently challenged the Manual. See Dep’t of Revenue v. Vanjaria Enters., 675 So.2d 252, 254 (Fla. 5th DCA 1996) (rejecting Department’s argument that' Vanjaria failed to properly challenge assessment procedure as unpromulgated rule because Vanjaria’s argument that the formula was unreasonable, “unauthorized by any rule,” and improper, was sufficient). We also note that DCF gave Mr. Winick no notice prior to the hearing that it relied on the Manual to deny benefits.
Even if Mr. Winick’s argument were inadequate, the applicable statute provides that “[fjailure to proceed under *469 this section shall not constitute failure to exhaust administrative remedies.” § 120.56(1)(e); see also United Health, Inc. v. Dep’t of Health & Rehabilitative Servs., 579 So.2d 342, 342-43 (Fla. 1st DCA 1991) (holding no requirement to exhaust rule challenge before contesting Medicaid reimbursement rate determination and requesting monetary relief).
Additionally, exhaustion of administrative remedies is not required where none are adequate or available to provide the requested relief. Coastal Recovery Ctrs. v. Matthews, 696 So.2d 1364, 1364 (Fla. 2d DCA 1997). Mr. Winick seeks monetary relief, continued benefits, which is not available in a rule challenge proceeding. See United Health, 579 So.2d at 343.
Exhaustion of administrative remedies is also not required “where ‘an agency acts without colorable statutory authority that is clearly in excess of its delegated powers.’ ” Fla. Dep’t of Agric. & Consumer Servs. v. City of Pompano Beach, 792 So.2d 539, 546 (Fla. 4th DCA 2001) (quoting Fla. Dep’t of Envtl. Reg. v. Falls Chase Special Taxing Dist., 424 So.2d 787, 796 (Fla. 1st DCA 1982)).
The most widely recognized exception to the general rule against judicial consideration of interlocutory agency rulings is the class of cases where an agency has exercised authority in excess of its jurisdiction or otherwise acted in a manner that is clearly at odds with the specific language of a statute.
Falls Chase, 424 So.2d at 794 n. 16 (quoting Coca-Cola Co. v. FTC, 475 F.2d 299, 303 (5th Cir.1973)); see also Wingfield, 581 So.2d at 196 (holding that agency statement that “imposes requirements ... not specifically required by statute ... constitute[s] an invalid exercise of delegated legislative authority”). As explained below, the Manual conflicts with the federal statute it purports to interpret. Thus, DCF denied benefits without statutory authority.
Our review of the record also establishes that Mr. Winick’s case falls under the exhaustion exception that applies where it “would subject the complainant to unreasonable delay or hardship.” Fla. High Sch. Athletic Ass’n v. Melbourne Cent. Catholic High Sch., 867 So.2d 1281, 1288 (Fla. 5th DCA 2004).

Merits

Mr. Winick contends that 42 U.S.C. §§ 1396a(a)(10)(E)(iii) and (iv) and 1396d(p)(2)(A) require that his eligibility for QI-1 benefits be based on the income limits for a household of the actual family size, in his case, two.
Martin v. North Carolina Department of Health & Human Services, 194 N.C.App. 716, 670 S.E.2d 629 (2009), offers compelling support for Mr. Winick. There, the petitioner applied for Medicaid Qualified Beneficiary benefits to pay her Medicare Part B premiums. Id. at 630-31. Like Mr. Winick, she lived with a spouse who was not a Medicare beneficiary and had no income. After initially approving her application, the Department terminated benefits because it had reevaluated her application using the income limit for a single individual, under which her monthly income exceeded the eligibility limit. Id. at 631.
The Department relied on its Medicaid Manual, which interpreted the federal statutes incorporating “standards and methodologies in Title XVI of the Social Security Act [, the SSI program].” Id. (quoting N.C. Admin. Code 10A 21B.0312(c) (June 2004)). “Pursuant to these SSI methodologies, the rules provide[d] that ‘[t]he income level to be applied for Qualified Medicare Beneficiaries described in 42 U.S.C. 1396d ... is based on the income level for one; or two for a married couple *470 who live together and both receive Medicare.’ ” Id. (quoting N.C. Admin. Code 10A 21B.0312(e)(4)). If the applicant’s spouse was not Medicare eligible, the Medicaid Manual considered the applicant as a “Medicaid individual with an ineligible spouse” and directed the Department to impute the ineligible spouse’s income to the applicant and apply that total income to the income limit for an individual, even though the applicant’s actual family size was two. Id.
The petitioner unsuccessfully appealed the decision to the local and state agencies and an administrative hearing officer. Id. A state trial court reversed the Department’s decision, and the Department appealed. Id. at 632. Although Martin did not address whether the Medicaid Manual was an unpromulgated rule, an earlier decision held that the Medicaid Manual was but a nonbinding agency interpretation of Medicaid statutes and rules. See Okale v. N.C. Dep’t of Health & Human Servs., 153 N.C.App. 475, 570 S.E.2d 741, 743 (2002). The Martin court affirmed the trial court’s decision and reinstated the petitioner’s benefits. 670 S.E.2d at 635. The court held that the Medicaid Manual methodology violated federal Medicaid law because the petitioner and her husband were a “family” for purposes of the statute that determined eligibility based on family income. Id. at 635.
The federal Medicaid guidelines require that MBI applicants’ incomes be compared to the income limits for a household of their actual family size:
§ 1396d. Definitions.
[[Image here]]
(p) Qualified medicare beneficiary; medical cost-sharing
(1) The term “qualified medicare beneficiary” means an individual—
[[Image here]]
(B) whose income (as determined under section 1382a[5] of this title for purposes of the supplemental security income'program ...) does not exceed an income level established by the State consistent with paragraph (2), and
(2)(A) The income level established under paragraph (1)(B) shall be at least the percent provided under subpara-graph (B) (but not more than 100 percent) of the official poverty line ... applicable to a family of the size involved.
§ 1396a. State plans for medical assistance
(a) Contents
A State plan for medical assistance must—
[[Image here]]
(10) provide—
(A) for making medical assistance available ... to—
[[Image here]]
(ii) at the option of the State, to any group or groups of individuals described in section 1396d(a) of this title
[[Image here]]
(I) who meet the income and resources requirements of the appropriate State plan ... or the supplemental security income program ....
[[Image here]]
*471 (E)(iii) [Special Low Income Medicare Beneficiary] for making medical assistance available for medicare cost sharing ... for individuals who[se] ... income exceeds the income level established by the State under section 1396d(p)(2) of this title but is less than ... 120 percent ... of the official poverty line ... for a family of the size involved; and
(iv) [QI-1] ... for making medical assistance available ... for medicare cost-sharing ... for individuals who[se] ... income exceeds the income level established by the State under section 1396d(p)(2) of this title and is at least 120 percent, but less than 135 percent, of the official poverty line ... for a family of the size involved.
(Emphasis added).
The Martin court pointed to the definition of “family size” in 42 Code of Federal Regulations section 423.772 (2005), governing the recently-established Medicare Part D program. 670 S.E.2d at 634: see Foster v. State, 861 So.2d 434, 439 (Fla. 1st DCA 2002) (“[CJourts may, as a general proposition, consider subsequent clarifying legislation in interpreting statutes.” (citing Bell v. New Jersey, 461 U.S. 773, 784, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983) (holding that view of a later Congress has persuasive value in establishing meaning of earlier enactment))). Medicare Part D uses eligibility-determination language identical to that of 42 U.S.C. § 1396d(p)(2)(A): “In the case of a subsidy eligible individual ... who is determined to have income that is below 135 percent of the poverty line applicable to a family of the size involved ....” Martin, 670 S.E.2d at 634 (quoting 42 U.S.C. § 1395w-114(a)(l) (2003)). Federal regulations specifically define “family size” for purposes of § 1395w-114(a)(l) as follows:
Family size means the applicant, the spouse who is living in the same household, if any and the number of individuals who are related to the applicant or applicants, who are living in the same household and who are dependent on the applicant or the applicant’s spouse for at least one-half of their financial support.
42 C.F.R. § 423.772 (2005); Martin, 670 S.E.2d at 634. The Martin court concluded that this definition comported with “[its] understanding of the plain meaning of ‘family of the size involved.’ ” Id. Accordingly, the court held that the Department’s interpretation of the federal guidelines was erroneous and thwarted the Medicaid Act’s intent.[6] Id. (citing 42 U.S.C. § 1396 (2000)): see also St. Francis Hosp., Inc. v. Dep’t of Health & Rehabilitative Servs., 553 So.2d 1351 (Fla. 1st DCA 1989) (holding nonrule policy that Department applied to reject hospital application was impermissible construction of controlling statutes); Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1186 n. 10 (10th Cir.2009) (stating that court defers to State Medicaid Manual, an unpromulgated interpretive document, to the extent it is consistent with the federal statute’s purposes and provide a reasonable interpretation of the statute): cf. Reames v. State of Okla. ex rel. Okla. Health Care Auth., 411 F.3d 1164, 1169-70 (10th Cir.2005) (holding, in Medicaid recipient’s action against Oklahoma Department of Human Services alleging it violated federal law in determining her benefits, that State Medicaid Man *472 ual policy to implement federal regulations governing Medicaid benefits administration did not conflict with the federal eligibility statute and its purposes).
Similarly, here, DCF followed its Manual interpreting the federal statutes, and the Manual’s procedure was to apply Mr. Winick’s income to the eligibility income limit for a household of one even though he lived with his spouse. He and his wife were a “family” for purposes of determining eligibility. Mr. Winick was eligible for the QI-1 program because his monthly income did not exceed the individual income limit for an applicant living in a household of two. DCF and the hearing officer erred in concluding otherwise. Therefore, we reverse.
Reversed.
SILBERMAN and SLEET, JJ., Concur.

. " ‘Rule’ means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule.” § 120.52(16), Fla. Stat. (2012). “Each agency statement defined as a rule by s. 120.52 shall be adopted by the rulemaking procedure provided by this section as soon as feasible and practicable.” § 120.54(l)(a).

. But see Fears v. Dep’t of Human Servs., 382 N.W.2d 473, 475-76 (Iowa.App.1985) (holding that Department erred in relying on unpromulgated Medicaid provider's manual as basis to deny benefits, but error was not reversible because benefits denial was justified without reference to the manual).

. The Manual provided:
0240.0101 Legal Basis_
The legal basis for SSI-Related Programs includes Title XVI (SSI) and Title XIX (Medicaid) of the Social Security Act, Chapter 409 of the Florida Statutes, and Chapters 65A-1, 65A-2 and 65A-4 of the Florida Administrative Code.

.Section 120.56(l)(a) provides that “[a]ny person substantially affected by a rule or a proposed rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority.”

. Title 42. The Public Health and Welfare
Chapter 7. Social Security
Subchapter XVI. Supplemental Security Income for Aged, Blind, and Disabled
Part A. Determination of Benefits
1382a. Income; earned and unearned income defined; exclusions from income
[[Image here]]
(b) ... determining the income of an individual (and his eligible spouse) ....

. The Medicaid Act enables states "to furnish ... medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services.” 42 U.S.C. § 1396-1.