NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0772-18T3
            A-1935-18T3

G.C.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES,

      Respondent-Respondent,

and

OCEAN COUNTY BOARD
OF SOCIAL SERVICES,

      Respondent.

_____

E.M.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES and ESSEX
COUNTY BOARD OF SOCIAL SERVICES.

      Respondents-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **March 18, 2020** |
| **APPELLATE DIVISION** |

Argued January 13, 2020 – Decided March 18, 2020

Before Judges Messano, Vernoia and Susswein.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Thomas John La Maina argued the cause for appellant G.C. (South Jersey Legal Services, attorneys; Kenneth Mark Goldman and Jakai T. Jackson, on the briefs).

Joshua M. Spielberg argued the cause for appellant E.M. (Legal Services of New Jersey, attorneys; Joshua M. Spielberg and Kristine Marietti Byrnes, on the briefs).

Shereen R. Youssef and Francis Xavier Baker, Deputy Attorneys General, argued the cause for respondent Division of Medical Assistance and Health Services in A-0772-18 and A-1935-18 (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Shereen R. Youssef and Francis Xavier Baker, on the briefs).

Courtney M. Gaccione, Essex County Counsel, attorney for respondent Essex County Board of Social Services, join in the brief of respondent Division of Medical Assistance and Health Services.

The opinion of the court was delivered by

MESSANO, P.J.A.D.

We issue a single opinion in these appeals, which were argued back-to-back, because the sole issue before us is whether a regulation promulgated by the Department of Human Services, Division of Medical Assistance and Health

Services (the Division), setting a methodology to determine eligibility for benefits under NJ Medicaid — Aged, Blind, and Disabled Program (ABD), contravenes both the federal Medicaid statute, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5 (Title XIX), and New Jersey's Medicaid statute, the "New Jersey Medical Assistance and Health Services Act[,]" N.J.S.A. 30:4D-1 to -19.5 (the Act). N.J.A.C. 10:72-4.4(d) explains those circumstances in which the income of certain family members of an aged, blind or disabled adult or child is "deemed," or attributed, to the applicant. Regardless whether any income is "deemed" or not, the regulation provides that "[i]f the countable income (before income deeming) of the aged, blind, or disabled individual <u>exceeds the poverty income guideline for one person he or she is ineligible for benefits</u> and income deeming does not apply." N.J.A.C. 10:72-4.4(d)(1) (the Regulation) (emphasis added).

G.C. and E.M. are both disabled and applied for ABD Medicaid benefits. At the time of her application, G.C. was fifty-years old, lived with her husband, also fifty and unemployed, and their two children, ages fourteen and twelve. G.C.'s sole income was $1141 per month from Social Security

Disability (SSD) benefits.[1]  Each of the children received $279.90 per month in Social Security benefits as G.C.'s dependents.  Thus, the family's total monthly income was $1700.80.

E.M. was fifty-seven-years old and resided with his wife, who was fifty-three and did not work.  E.M.'s sole income was $1193 per month in SSD benefits.[2]

The respective county boards of social services denied both applications. Each board applied the Regulation's methodology and concluded that G.C.'s and E.M.'s countable income exceeded the monthly federal poverty level (FPL) at the time for one person — $1005 — and, therefore, both were ineligible for ABD benefits.  See N.J.A.C. 10:71-5.6(a) (setting income eligibility standards for the ABD program).  For our purposes, all parties agree that G.C.'s and E.M.'s countable incomes fall below the FPL for a family of four or two respectively, and, if those income limits applied, both would qualify for benefits.

---

[1]  See Burns v. Edwards, 367 N.J. Super. 29, 36–39 (App. Div. 2004) (explaining differences between SSD benefits and Supplemental Security Income (SSI) benefits).

[2]  At other points in the record, E.M.'s income is stated to be $1059 per month. We use the figure contained in the Division's final decision.

G.C. and E.M. appealed to the Division, which transferred the cases to the Office of Administrative Law as contested matters. In G.C.'s case, the administrative law judge (ALJ) found she was ineligible because her individual "countable income" exceeded the FPL guideline for one person. The Division accepted and affirmed the findings and conclusions of the ALJ and denied G.C.'s application. In E.M.'s case, the ALJ concluded that the Regulation contravened 42 U.S.C. § 1396a(m), and N.J.S.A. 30:4D-3(i)(11), because both statutes require that family size be considered in determining eligibility for ABD benefits. The Division rejected the ALJ's conclusion and, in its final agency decision, applied the Regulation, concluded E.M.'s "countable" income exceeded the FPL for one person, and denied his application.

These appeals followed.

I.

We provide some necessary background on Medicaid, and the statutory and regulatory regime adopted in New Jersey. As a joint program between the federal government and those states that choose to participate, Medicaid provides medical assistance to needy persons at public expense. N.E. v. N.J. Div. of Med. Assistance & Health Servs., 399 N.J. Super. 566, 571 (App. Div. 2008). Participating states are required to comply with Title XIX and its

implementing regulations, E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 191 (App. Div. 2013) (citing United Hosps. Med. Ctr. v. State, 349 N.J. Super. 1, 4, (App. Div. 2002)), including "eligibility requirements set by the federal government[,]" Zahner v. Sec'y Pa. Dep't of Human Servs., 802 F.3d 497, 512 (3d Cir. 2015). "Each participating state must adopt a plan that 'includes "reasonable standards . . . for determining eligibility for . . . medical assistance . . . [that is] consistent with the objectives" of the Medicaid program.'" Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 166 (1998) (alteration in original) (quoting L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484–85 (1995)).

"States that participate in the Medicaid program must provide coverage to the 'categorically needy,' which includes[, among others,] persons eligible to receive benefits under Aid to Families with Dependent Children (AFDC), or [SSI] for the Aged, Blind, and Disabled under Title XVI of the Social Security Act . . . ." L.M., 140 N.J. at 485 (citations omitted) (citing 42 U.S.C. § 1396a(a)(10)(A)(i)). "The categorically needy are 'persons whom Congress considered especially deserving of public assistance because of family circumstances, age, or disability.'" Ibid. (quoting Schweiker v. Gray Panthers, 453 U.S. 34, 37 (1981)).

States may opt to provide coverage to other groups of individuals, including the "optional categorically needy[,]" ibid. (quoting Herweg v. Ray, 455 U.S. 265, 268–69 (1982)), those categories of individuals defined in 42 U.S.C. § 1396a(a)(10)(A)(ii).[3] As the Second Circuit succinctly explained:

> States participating in the Medicaid program are required to provide coverage to certain groups[] and are given the option to extend coverage to various other groups. The line between mandatory and optional coverage is primarily drawn in § 1396a(a): mandatory coverage is specified in § 1396a(a)(10)(A)(i), and the state options are set forth in subsection (ii). The groups specified in these sections are collectively referred to . . . as the "categorically needy."
>
> [Skandalis v. Rowe, 14 F.3d 173, 175–76 (2d Cir. 1994).]

Appellants are in the optional categorically needy group of putative benefit recipients. Pursuant to § 1396a(10)(A)(ii)(X), states may, but are not required, to provide Medicaid benefits to "any group . . . of individuals described in [42 U.S.C. § 1396d(a)]" who are not categorically needy under subsection (i), and "who are described in subsection (m)(1) . . . ." In turn, 42 U.S.C. § 1396d(a) includes those who are not receiving SSI benefits, but are, among other things, sixty-five-years old or older, blind, or permanently and

---

[3] States may also opt to provide benefits to "medically needy" individuals, or "any reasonable categories" of applicants who do not otherwise qualify. Mistrick, 154 N.J. at 166–67.

totally disabled. 42 U.S.C. § 1396d(a)(iii) — (v). See also 42 CFR 435.201(a)(1) — (3) (allowing states to provide coverage to aged, blind and disabled "as optional categorically needy" individuals). Subsection (m)(1), entitled "Description of Individuals[,]" in turn includes disabled individuals. 42 U.S.C. 1396a(m)(1)(A). The methodology used by a state to determine "eligibility for optional categorically needy applicants may be less restrictive, but may not be more restrictive, than the methodology used to determine eligibility for SSI applicants." Mistrick, 154 N.J. at 168 (citing 42 U.S.C. § 1396a(r)(2)(A)).

"The [Act] authorizes New Jersey's participation in the federal Medicaid program." E.B., 431 N.J. Super. at 192 (citation omitted). The program was expanded in 1988 to "include aged, blind, and disabled individuals not otherwise eligible" for New Jersey's Medicaid Only program as it then existed. A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 345 (2009) (citing N.J.A.C. 10:71-1.1 to -9.5). The Act defines a "qualified applicant" to include "an individual . . . who is . . . disabled . . . whose income does not exceed 100% of the poverty level, adjusted for family size[.]" N.J.S.A. 30:4D-3(i)(11) (emphasis added).

The provisions of Title XIX regarding eligibility are considerably more obtuse, requiring a roadmap and compass to navigate. First, 42 U.S.C.

§ 1396a(a)(10)(C) provides that if a state chooses to provide medical assistance

> for any group of individuals described in section [42 U.S.C. § 1396d(a)] . . . <u>who are not described in [§ 1396a(a)(10)(A)]</u> . . . then —
>
>> (i) the plan must include a description of . . . (III) the single standard to be employed in determining income . . . eligibility for all such groups, and the methodology to be employed in determining such eligibility, which shall be no more restrictive than the methodology which would be employed under the [SSI] program in the case of groups consisting of aged, blind, or disabled individuals . . . and which shall be no more restrictive than the methodology . . . under the appropriate State plan . . . [.]
>
> [(Emphasis added).]

As noted, appellants are individuals described in § 1396d(a); but, they are also individuals described in § 1396a(10)(A), which includes both the categorically needy and the optional categorically needy — specifically, they are members of a group covered by § 1396a(10)(A)(ii)(X). As a result, the Division's reliance upon this provision of Title XIX, and the distinction it urges between "methodology" and "eligibility," are inapposite to the issue presented.

Title XIX includes specific provisions for income standards applicable to appellants and other individuals described in subsections (m)(1), (2), and (3) of § 1396a:

> (1)   Individuals described in this paragraph are individuals —
>
> > (A)  who are . . . disabled individuals . . . ,
> >
> > (B) whose income (as determined . . . for purposes of the [SSI] program . . . ) does not exceed an income level established by the State consistent with paragraph 2(A), and
> >
> > . . . .
>
> (2)(A)  The income level established under paragraph (1)(B) may not exceed a percentage (not more than 100 percent) of the official poverty line . . . applicable to a family of the size involved.
>
> > . . . .
>
> (3)  [F]or individuals described in paragraph (1) who are covered under the State plan by virtue of subsection (a)(10)(A)(ii)(X) . . . —
>
> > (A)  the income standard to be applied is the income standard described in paragraph (1)(B)[.]
>
> [ (Emphasis added).]

With some trepidation, we attempt to summarize. Appellants are eligible for ABD benefits pursuant to subsection (a)(10)(A)(ii)(X) because they are members of a category described in subsection (m), i.e., disabled individuals.

10                                                                A-0772-18T3

They are eligible if their monthly income does not exceed 100% of the FPL established for the purposes of the SSI program, and that income level set by the State <u>cannot exceed</u> 100% of "the income level . . . applicable to a family of the size involved." § 1396a(m)(2)(A).

II.

Appellants present similar, albeit not identical, arguments for our consideration. G.C. argues the Division erred by not including her other family members in determining her income eligibility as required by § 1396a(m)(2)(A). She alternatively contends the Regulation conflicts with the Act, which provides eligibility to those "whose income does not exceed 100% of the poverty level, <u>adjusted for family size</u>[.]" N.J.S.A. 30:4D-3(i)(11) (emphasis added). Lastly, she argues that even if the Regulation does not violate the Act, it directly conflicts with Title XIX, and is therefore pre-empted.

E.M. also contends the Division's reliance on the Regulation's use of an FPL "applicable to a family size of one," violates Title XIX and the Act, both of which require consideration of the family's size. Additionally, he argues that in denying eligibility, the Division relied upon a regulation applicable only to the SSI program, which is not applicable to determine Medicaid eligibility.

In both cases, the Division counters by arguing it appropriately applied the Regulation, which "mirrors the eligibility methodology used by the [Social Security Administration] when making SSI determinations[,]" and correctly denied the applications. It further contends that the Regulation violates neither Title XIX nor the Act.

A.

We agree with the Division that the Regulation does not violate Title XIX. Our role is to interpret Title XIX to achieve Congress's intent, and the best way to do that is for us to examine the plain language of the statute. See Pa., Dep't of Pub. Welfare v. United States Dep't of Health & Human Servs., 647 F.3d 506, 511 (3d Cir. 2011) ("We determine whether Congress has unambiguously expressed [its] intent by looking at the plain and literal language of the statute." (alteration in original) (quoting United States v. Geiser, 527 F.3d 288, 294 (3d Cir. 2008))); see also Garden State Check Cashing Serv., Inc. v. Dep't. of Banking & Ins., 237 N.J. 482, 489 (2019) ("The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005))).

Appellants argue that § 1396a(m)(2)(A) requires the Division to set the income level for eligibility purposes at the FPL "applicable to a family of the

size involved." Simply put, appellants misread the statute. By its plain terms, § 1396a(m)(1)(B) requires the Division to first determine an applicant's income, using SSI program methodology, and then determine whether that exceeds the "income level established by the State," pursuant to § 1396a(m)(2)(A). However, that subsection only prohibits the State from establishing an income level that "exceed[s] a percentage (not more than 100 percent) of the official poverty line . . . applicable to a family of the size involved." The Division's use of the Regulation does not set an income level for eligibility that <u>exceeds</u> the FPL for a family of four or two people; rather, the Regulation sets an income level for eligibility that is less than the FPL for a family of four or two.

With one exception, the cases from other jurisdictions cited by appellants simply do not address this section of Title XIX, and therefore are factually and legally unpersuasive. For example, in <u>Martin v. N.C. Dep't of Health & Human Servs.</u>, the plaintiff, who resided with her spouse who was not a Medicare beneficiary, was denied Medicaid reimbursement for her Medicare Part B premiums because her monthly income exceeded the state plan's income limit for a single individual. 670 S.E.2d 629, 630–31 (N.C. Ct. App. 2009). The court reversed the agency's determination, interpreting a very different provision of Title XIX, 42 U.S.C. § 1396d(p), applicable to

Medicare-sharing benefits under Medicaid. Id. at 634. That provision specifically required the state agency to set the income level for eligibility at the FPL "applicable to a family of the size involved." 42 U.S.C. § 1396d(p)(2)(A). Accord Wheaton v. McCarthy, 800 F.3d 282, 288 (6th Cir. 2015) (concluding state agency's use of the "individual-need [SSI] standard" for family of one was contrary to "paragraph (2)(A) [of 42 U.S.C. § 1396d(p), which] expressly adopts a 'family' need standard"); Winick v. Dep't of Children & Family Servs., 161 So. 3d 464, 466–67, 471–72 (Fla. Dist. Ct. App. 2014) (citing Martin and reversing state agency's denial of benefits to applicant who lived with his wife based on family of one regulation).

The most similar factual circumstances were presented in Pachas v. N.C. Dep't of Health & Human Servs., 822 S.E.2d 847 (N.C. 2019). There, the plaintiff was denied full Medicaid ABD benefits because he was receiving SSD benefits that exceeded the income limit for an individual to qualify as categorically needy, and qualified, instead as "medically needy." Id. at 848. Relying on 42 U.S.C. § 1396a(m)(2)(A), and citing Martin, the plaintiff argued that the state agency's "method of calculating his income eligibility" violated Title XIX, because it failed to consider his family size. Ibid. The trial court agreed. Id. at 849–50.

However, without any appellate court ruling on the question, the plaintiff's medical status changed, and he became eligible for a different Medicaid program.[4]  Id. at 850.  For reasons that are not relevant here, the appellate court never addressed the ultimate question whether 42 U.S.C. § 1396a(m)(2)(A) required consideration of family size in setting the income limit for all ABD Medicaid services.  Id. at 852.  The North Carolina Supreme Court remanded the matter for a determination as to whether the State had obtained a federal waiver from the requirements of 42 U.S.C. § 1396a(m) as applied to the new program under which plaintiff was receiving benefits.  Id. at 853.

On remand, the intermediate appellate court determined that the State had not received such a waiver and remanded the matter to the trial court for the entry of an order "granting the relief sought."  Pachas v. N.C. Dep't of Health & Human Servs., 830 S.E. 2d 703 (N.C. Ct. App. 2019).  Thus, there was no ruling on the substance of the plaintiff's argument in either appellate court, nor do any of the opinions in the case examine the specific language of 42 U.S.C. § 1396a(m).  Pachas is unpersuasive authority.

---

[4]  It appears that the state agency did not appeal the trial court's decision because it ordered the local social services agency to reinstate plaintiff's benefits.  Id. at 850.

We need not address the cases from other jurisdictions cited by the Division as authority for its interpretation of the specific language of 42 U.S.C. § 1396a(m). Instead, we rely on the statute's plain language and conclude the Regulation does not violate Title XIX. The income level set by applying the Regulation's methodology is consistent with § 1396a(m)(1)(B), and that income level does not exceed the FPL for the respective sizes of appellants' families. 42 U.S.C. § 1396a(m)(2)(A).

B.

Turning to appellants' arguments regarding the Regulation and the Act, we start by acknowledging that "[s]tatutory and regulatory construction is a purely legal issue subject to de novo review." A.B., 407 N.J. Super. at 340 (citing Mayflower Sec. Co. v. Bureau of Sec., Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)). The Legislature plainly stated its intention when it passed the Act:

> It is the intent of the Legislature to make statutory provision which will enable the State of New Jersey to provide medical assistance, insofar as practicable, on behalf of persons whose resources are determined to be inadequate to enable them to secure quality medical care at their own expense, and to enable the State, within the limits of funds available for any fiscal year for such purposes, to obtain all benefits for medical assistance provided by the Federal Social Security Act as it now reads or as it may hereafter be amended, or by any other Federal act now in effect or which may hereafter be enacted.

[N.J.S.A. 30:4D-2 (footnote omitted).]

As noted, the Act defines a "'qualified applicant'" to include "an individual . . . who is . . . disabled . . . whose income does not exceed 100% of the poverty level, adjusted for family size, and whose resources do not exceed 100% of the resource standard used to determine medically needy eligibility pursuant to paragraph (8) of this subsection[.]" N.J.S.A. 30:4D-3(i)(11) (emphasis added). "Poverty level" is defined as "the official poverty level based on family size . . . ." N.J.S.A. 30:4D-3(p) (emphasis added).

The committee statement accompanying the 1988 amendment to N.J.S.A. 30:4D-3, which expanded coverage to ABD individuals, see A.B., 407 N.J. Super. at 345, by creating a new category of qualified applicants, stated the amendment was intended to "expand[] the eligibility criteria . . . to include persons who are . . . disabled . . . and whose incomes are less than the appropriate poverty level for their family size and whose assets do not exceed the level permitted under the State's medically needy program." Senate Revenue, Finance and Appropriations Committee Statement to L. 1987, c. 349 (June 15, 1987) (emphasis added). In signing the legislation, Governor Kean said the expansion to include ABD applicants was "a step . . . 'in keeping with the spirit of compassion and caring which has come to typify New Jersey and our people.'" Press Release, Office of the Governor, Statement upon Signing

17

S-2972 (Jan. 4, 1988).  The plain language of the Act compels the conclusion that ABD eligibility standards must take family size into account when setting the appropriate FPL for eligibility determinations.  The issue is whether the Regulation does that.

We "begin[] with a presumption that the [Regulation is] both valid and reasonable[.]"  Hackensack Riverkeeper, Inc. v. N.J. Dep't of Envtl. Prot., 443 N.J. Super. 293, 302 (App. Div. 2015) (quoting N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012)).  "[W]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible."  Ibid. (alteration in original) (quoting In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488–89 (2004)).

"It has been a longstanding principle that 'the grant of authority to an administrative agency is to be liberally construed . . . to enable the agency to accomplish its statutory responsibilities.'"  In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. 386, 395 (App. Div. 2018) (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978)).  "[A] challenger must 'demonstrat[e] an inconsistency between the regulation and the statute it implements, a violation of policy expressed or implied by the Legislature, an extension of the statute beyond what the Legislature intended, or a conflict between the enabling act and other statutory law that cannot be

harmonized.'" Hackensack Riverkeeper, 443 N.J. Super. at 302 (second alteration in original) (quoting N.J. Ass'n of Sch. Adm'rs v. Cerf, 428 N.J. Super. 588, 596 (App. Div. 2012)). "While findings of ultra vires actions are disfavored, '[o]ur role is to enforce the will of the Legislature' because '[s]tatutes cannot be amended by administrative fiat.'" In re Agric., Aquacultural, & Horticultural Water Usage Certification Rules, 410 N.J. Super. 209, 223 (App. Div. 2009) (alterations in original) (citation omitted) (quoting TAC Assocs. v. N.J. Dep't of Envtl. Prot., 408 N.J. Super. 117, 124 (App. Div. 2009)). "[I]f the regulation is plainly at odds with the statute, we must set it aside." In re Freshwater Wetlands, 180 N.J. at 489. The challenging party bears the burden of proof. Ibid. (citing Bergen Pines Cty. Hosp. v. Dep't of Human Servs., 96 N.J. 456, 477 (1984)).

As noted, while Title XIX prohibits any state from adopting more "restrictive" eligibility requirements, states are free to adopt less restrictive requirements that make additional individuals eligible for benefits. Mistrick, 154 N.J. at 168 (citing 42 U.S.C. § 1396a(r)(2)(b)). The Division acknowledged at oral argument before us that the methodology outlined by the Regulation means ABD benefit eligibility determinations initially depend solely on the income of the applicant, i.e., "a family of one," without, as the Act requires, any "adjustment for family size." The result, as appellants' cases

demonstrate, is an eligibility determination that has nothing whatsoever to do with the size of the applicant's family. Moreover, using the Regulation's methodology, any adjustment for family size may result in additional "deemed" income, and not a reduction in the applicant's "countable income," thereby driving an otherwise qualified applicant over the FPL limit for a "family of one."

We cannot accept that the Legislature intended such "through the looking glass" logic, when the plain language of the Act and legislative history surrounding the 1988 amendment intended eligibility based, in part, on the FPL of the applicant's family size. We therefore conclude the Regulation, N.J.A.C. 10:72-4.4(d)(1), conflicts with the Act and must be stricken.

Because it is undisputed that at the time of the final agency decisions, appellants would have been eligible for ABD benefits if the Division applied eligibility limits consistent with the FPL for appellants' family sizes, we reverse the final agency decisions in these two appeals and remand the matters to the Division for further proceedings. We have no ability to discern the present income levels of appellants and, therefore decline exercising original jurisdiction and order the Division to approve their applications at this time.

Because of the significant impact our decision may have on other applicants, and to avoid disruption to the processing of applications by local

20

social services boards, we sua sponte stay our judgment in all other respects for forty-five days to permit the Division to seek further review in the Supreme Court.  See, e.g., In re N.J.A.C. 12:17-2.1, 450 N.J. Super. 152, 173 (App. Div. 2017).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

21

A-0772-18T3